The plaintiffs, William Jack Sexton and Marsha C. Sexton sued St. Clair Federal Savings Bank ("St. Clair"), alleging breach of contract and breach of fiduciary duty. The Sextons appeal from a partial summary judgment 1) in favor of St. Clair on the Sextons' fiduciary relationship claim and 2) holding that the Sextons could not recover certain damages on their breach of contract claim.[1]
This case arose out of an loan agreement between the Sextons and St. Clair, through which the Sextons borrowed approximately $160,000 from St. Clair to build a residence. The loan was secured by a construction mortgage. The loan agreement provided that St. Clair was to disburse the loan proceeds in increments approximating the stage of construction of the residence. *Page 960 
Several weeks after construction had started, St. Clair notified the Sextons that the stage of construction did not justify the amount of proceeds that had been drawn by the Sextons' builder. St. Clair advised the Sextons that, given the situation, it would not permit any more draws on the loan proceeds at that time. According to the Sextons, they learned that all but $17,000 of the loan proceeds had been disbursed by St. Clair and that approximately $93,000 of the monies disbursed had not been used by their builder on the construction of the residence.
The Sextons were unable to complete the construction, and they ceased making the required payments on the construction loan. St. Clair sued, seeking an order of foreclosure, the sale of the uncompleted residence to satisfy the indebtedness on the loan, and any deficiency that might exist after the sale. The Sextons counterclaimed, alleging that St. Clair had failed to monitor construction and to disburse the loan proceeds in proportion to the stage of construction consistent with the loan agreement. They alleged that St. Clair had thereby breached the loan agreement and had breached a fiduciary duty to them. In addition to punitive damages, the Sextons sought compensatory damages for what they claimed were their "direct, consequential, and incidental losses, including an amount for their mental anguish, emotional suffering, annoyance [and] inconvenience," and they sought to recover purported lost profits from their sale of investment property. They alleged that they sold that investment in an effort to raise money to complete the construction.
St. Clair moved for a partial summary judgment on the Sextons' counterclaims. As indicated, that motion was granted by the trial court. On appeal, the Sextons argue: 1) that the trial court erred in determining that mental anguish-type damages were not recoverable on their contract claim; they say this case falls within an exception to the general rule prohibiting such damages; 2) that the "fiduciary relationship" claim was not properly before the trial court for adjudication and that, in any event, they produced legally adequate evidence to preclude a summary judgment for the defendant on that claim, and; 3) that the trial court erred in holding that the Sextons could not recover the lost profits they claimed resulted from the sale of investment property to raise money to complete the construction.
As to the first issue raised by the Sextons — whether they can recover mental anguish-type damages — the trial court stated that in limited circumstances damages for mental anguish can properly be awarded on a breach of contract claim. The trial court correctly stated:
 "Damages cannot be received for mental anguish arising from a breach of contract. There are exceptions to that general rule and they are as follows:
 " '[W]here the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, it is just that damages therefor be taken into consideration and awarded. . . .
 " 'Another exception is where the breach of the contract is tortious, or attended with personal injury, damages for mental anguish may be awarded.' "
C.R. 211, quoting B M Homes, Inc. v. Hogan, 376 So.2d 667,671 (Ala. 1979) (as B M Homes quoted earlier cases). The court added: " 'The ground on which the right to recover such damages is denied, is that they are too remote, were not within the contemplation of the parties, and that the breach of the contract is not such as will naturally cause mental anguish.' " C.R. 211, quoting Stead v. Blue Cross-Blue Shield of Alabama,346 So.2d 1140, 1143 (Ala. 1977). The court concluded that, based on undisputed material facts, as a matter of law "the case . . . does not fall into those narrow exceptions permitting the recovery [of damages] for mental anguish and suffering. The [distress] complained of by the [Sextons is] too remote and would not have been within the contemplation of the parties when entering into the agreement. . . ." C.R. 211.
The Sextons argue that the trial court erred in so holding, and they emphasize the special nature of the breach of a contractual *Page 961 
provision involving one's residence, as it relates to the applicability of the exception based on a "contractual duty" that is "coupled with matters of mental concern or solicitude." For example, with reference to this exception the Court inB M Homes, 376 So.2d at 672, stated: "[C]ontracts dealing with residences are in a special category and are exceptions to the general damages rule applied in contract cases which prohibits recovery for mental anguish."
In the B M Homes case, the plaintiffs sued a home builder, who had agreed to construct their new residence, but who did not do so in a workmanlike manner. The finished structure had "major defects." The plaintiffs sued on contract theories, and demanded damages for mental anguish. This Court applied the exception, stating:
 "It was reasonably foreseeable . . . that faulty construction of [the plaintiffs'] house would cause them severe mental anguish. The largest single investment the average American family will make is the purchase of a home. The purchase of a home by an individual or [a] family places the purchaser in debt for a period ranging from twenty (20) to thirty (30) years."
Id.
The contract provision alleged to have been breached in this case deals with the Sextons' residence. We observe, also, that this provision was apparently aimed at preventing the very kind of situation that the plaintiffs allege occurred here: the squandering of the means to build that residence, the construction loan proceeds. That provision states: "[T]he bank is authorized to disburse funds under its control [from the] construction loan account, together with the net proceeds of the loan, only in proportion to its Inspector's Report of Progress or by Architect's or Superintendent's Certificate accompanied by a proper affidavit from the contractor." A St. Clair employee testified that it is within the bank's "normal process" for bank personnel to discuss the "monitoring procedures" with construction loan borrowers, and he agreed that this was done "in part[,] in order so that the [construction loan borrower] will have some confidence in entering into [a construction loan] agreement — so that they will know that they are having some type of protection." C.R. 275-76. Consistent with this testimony, William Jack Sexton testified that a bank employee had gone "over the loan papers" with him and that the employee had "pointed out that the bank would monitor [disbursements]." According to Sexton, the employee told him "that the wording [of the loan agreement] was that it should not — the funds wouldn't be used for any other expenditures other than for our own home — personal home."
St. Clair argues that the contract allegedly breached contemplated matters regarding an anticipated residence, rather than a residence occupied by the plaintiffs.[2] St. Clair says that therefore this case is not generally "characteristic of the cases that fit the exception to the general rule," which, it says, involves situations in which the contract relates to a current residence.
We agree that the exception based on a "contractual duty" that is "coupled with matters of mental concern or solicitude" has been applied in situations involving contracts relating to a plaintiff's current residence. See, e.g., Orkin ExterminatingCo. v. Donavan, 519 So.2d 1330 (Ala. 1988). However, the contract at issue in the B M Homes case, where the Court held that the exception applied, related to construction of a future residence. Similarly, in Lawler Mobile Homes, Inc. v. Tarver,492 So.2d 297 (Ala. 1986), where the Court held that the exception applied, the contract related to the sale and delivery of a mobile home, the plaintiffs' future residence. Like the plaintiffs in this case, the plaintiffs in LawlerMobile Homes were living elsewhere at the time of the contract, and the contract in Lawler Mobile Homes did not relate to the residence in which they were residing at the time of contract. *Page 962 
We are unpersuaded by St. Clair's argument that this case is distinguishable from others where the exception was held to apply and that the exception therefore would not apply here. We find no meaningful distinction between this case and other cases applying the exception, most notably B M Homes andLawler Mobile Homes.
Applying the reasoning of those cases to the situation here, we hold that a reasonable construction lender could easily foresee that a borrower could undergo extreme mental anguish if that lender breached a provision such as the one these plaintiffs allege was breached. Here, the provision alleged to have been breached, although it appears as part of a contract to lend money, unquestionably relates to the construction of the Sextons' residence. Clearly, the contractual duty created by that provision — to monitor the construction of the Sextons' residence and the disbursements related to that construction — "is so coupled with matters of mental concern or solicitude, or with the feelings of the part[ies] to whom [that] duty is owed, that a breach will necessarily or reasonably result in mental anguish or suffering." B M Homes, 376 So.2d at 671 (quoting earlier cases).
As to their claim alleging a breach of a fiduciary duty, the Sextons argue that the trial court entered a summary judgment as to a matter that was not before it on St. Clair's summary judgment motion.
The record does not indicate that on its motion for a partial summary judgment St. Clair argued that it was entitled to a judgment on the Sextons' fiduciary duty claim on the basis that St. Clair owed the Sextons no fiduciary duty. St. Clair's motion was directed instead, to some of the damages claimed by the Sextons, e.g., damages for mental anguish-type injuries.[3] The trial court went beyond the damages questions before it, however, and held that "[t]he only relationship between the parties that has been shown is the relationship of debtor and creditor, which . . . is not a fiduciary relationship." Based on this determination, the trial court disposed of the fiduciary duty claim in toto, in favor of St. Clair.
Because all aspects of the fiduciary duty claim were not before the trial court, we hold that the court erred in adjudicating all aspects of that claim in favor of St. Clair.[4] See Parr v. Goodyear Tire Rubber Co., 641 So.2d 769
(Ala. 1994); Henson v. Mobile Infirmary Ass'n, 646 So.2d 559
(Ala. 1994). We do not address whether, as to some of the damages sought under that claim, a summary judgment would have been appropriate. The parties do not raise this issue on appeal.
Finally, the Sextons argue that the trial court improperly entered the summary judgment on their claim for expenses incurred in mitigating their damages, expenses they say are made up of lost profits on their sale of investment property, which they say they sold in order to continue construction after St. Clair allegedly breached the loan agreement. After a thorough review of the record, we hold that the trial court properly entered the summary judgment as to this claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ALMON, SHORES, HOUSTON and COOK, JJ., concur.
[1] The trial court made the judgment final pursuant to Ala.R.Civ.P. 54(b).
[2] St. Clair also emphasizes that "the Sextons never had to fear being cast out on the street, being battered by the outside elements or having to find temporary substitute shelter." Such a point would be relevant on the question of the degree of the Sextons' alleged mental anguish, a question not before us.
[3] In sum, it was St. Clair's position on the motion for a partial summary judgment that if it was liable to the Sextons, the Sextons would be entitled only to damages that would "place [them] in the condition they would have been in [otherwise]." St. Clair asserted that such damages would not properly include damages for alleged expenses of mitigation, mental anguish-type injuries, punitive damages, or the costs of this action. St. Clair suggested that the Sextons would be entitled, if they prevailed, only to an amount that would offset any monies St. Clair might become entitled to if it obtained a deficiency judgment related to a foreclosure sale.
[4] Also, because this issue is resolved favorably to the Sextons on the basis that the claim alleging a breach of fiduciary duty was not before the trial court, we do not address the Sextons' persuasive argument that, in any event, they had presented substantial evidence indicating the existence of a fiduciary relationship. *Page 963