[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 65 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 66 
Tony Bowers and Ann Bowers, husband and wife, sued Wal-Mart Stores, Inc. ("Wal-Mart"), General Motors, Inc. ("GM"), and various other parties, asserting claims of negligence, wantonness, breach of warranty, and negligent training and supervision. They sought compensatory and punitive damages for mental anguish and for damage to their property caused by a fire that started in Mrs. Bowers's automobile and spread to the Bowerses' house, destroying both the car and the house. Shortly before the fire, Mrs. Bowers had had the oil changed in her car at a Wal-Mart store.
The defendants filed summary-judgment motions. The trial court denied Wal-Mart's summary-judgment motion as to Ann Bowers's claim for breach of warranty, Ann and Tony Bowers's claims for mental anguish and their claims for property damage, but granted the motions as to all the other claims and all other defendants. The case proceeded to trial with Wal-Mart as the only defendant. The jury found for the Bowerses on their remaining claims against Wal-Mart. This Court reversed the judgment entered on that verdict and remanded the case for a new trial because the trial court had improperly allowed the jury to consider Mr. Bowers's request for damages for mental anguish. Wal-Mart Stores, Inc. v. Bowers,752 So.2d 1201 (Ala. 1999). Wal-Mart prevailed on all counts in the second trial. The Bowerses now appeal, asserting several errors they argue the trial court made. We affirm.
 I.
The Bowerses argue that, in the second trial, the court improperly allowed Wal-Mart to argue that a defect in the automobile it says was caused by an act or omission of GM had caused the fire. The Bowerses argue that because the trial court had originally entered a summary judgment for GM and made that summary judgment final, pursuant to Rule 54(b), Ala.R.Civ.P., Wal-Mart should not have been allowed to present evidence of possible defects in the car it says were attributable to GM. Wal-Mart counters that it had the right to vigorously cross-examine the Bowerses' experts about how they had reached their conclusions as to the cause of the fire. Wal-Mart argues that vigorous cross-examination required that it present possible theories of how the fire could have started, other than through its negligence, and that it then ask the experts to explain why they did not consider those theories.[1] *Page 67 
Whether collateral estoppel[2] precludes a defendant from arguing wrongdoing by a codefendant in whose favor a summary judgment has been entered appears to be a question of first impression in Alabama. However, a case on point is Golman v. Tesoro Drilling Corporation,700 F.2d 249, 253 (5th Cir. 1983). In that case, the trial court granted one defendant's motion for a summary judgment and dismissed that party, and the remaining defendant asserted a defense based on the dismissed party's negligence. The United States Court of Appeals for the Fifth Circuit stated: "It would be inequitable, if not illogical, to hold that [the plaintiff's] inability to produce evidence should redound to his benefit by estopping [the remaining defendant] from relying upon a legally valid defense." Any other result misunderstands estoppel; a party is entitled to its day in court. Having its day in court means, for Wal-Mart, no less than the opportunity to argue its case.
It is true that in Tesoro Drilling Corporation no final order had been entered; it is also true that "[a]n order granting partial summary judgment is interlocutory; it has no res judicata or collateral estoppel effect." Tesoro Drilling Corp., 700 F.2d at 253, citing Travelers Indem.Co. v. Erickson's, Inc., 396 F.2d 134, 136 (5th Cir. 1968). Here, the summary judgment for GM was made final; however, the Fifth Circuit's reasoning in Tesoro Drilling Corporation is still helpful. The Fifth Circuit did note a case stating that a partial summary judgment was a final judgment on the merits for purposes of estoppel or res judicata, but it then considered the effect such a final judgment would have on the remaining defendant. Tesoro Drilling Corporation, 700 F.2d at 253, citingIn re Falstaff Brewing Co. Antitrust Litigation, 441 F. Supp. 62, 66
(E.D.Mo. 1977). "In this instance the trial court's order merely established that [the plaintiff] had not met his burden of producing evidence sufficient to place in issue material facts relative to [the dismissed defendant's] fault. It was not intended to foreclose [the remaining defendant's] right to propound an argument. . . ." 700 F.2d at 253. Principles of res judicata should not permit a plaintiff's failure as to one defendant to benefit it as to a remaining defendant. To hold otherwise would encourage less than full and vigorous prosecution of claims. *Page 68 
The Bowerses also argue that the summary judgment entered for GM is the law of the case, because the trial court made the summary judgment final, pursuant to Rule 54(b), Ala.R.App.P. "`Under the doctrine of the "law of the case," whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.'" Southern UnitedFire Ins. Co. v. Purma, 792 So.2d 1092, 1094 (Ala. 2001), quotingBlumberg v. Touche Ross Co., 514 So.2d 922, 924 (Ala. 1987). In this case, the Bowerses' failure to present substantial evidence against GM at the summary-judgment stage resulted in a summary judgment for GM. That determination of rights between the Bowerses and GM is not "law of the case" regarding the Bowerses' claims against Wal-Mart, a different party.
Wal-Mart had the right to defend itself by using all arguments legally at its disposal. One such argument was that the experts hired by the Bowerses rushed to the conclusion that something done during the oil change at Wal-Mart caused the fire and that they did not consider other possible causes. To elicit evidence to support this "rush-to-judgment" theory, Wal-Mart cross-examined the Bowerses' experts about the methods they used to reach, and what factors they considered in reaching, their conclusions. Wal-Mart also asked the experts whether they had considered all possible causes of the fire by checking for recalls and technical service bulletins for the type of car involved. Wal-Mart elicited responses that indicated that the Bowerses' experts had not looked for a cause of the fire other than the oil change. Because questioning the validity of the conclusions of a plaintiff's experts is an integral part of the defense, the trial court did not abuse its discretion in allowing Wal-Mart to conduct its defense.
 II.
The Bowerses next contend that the trial court erroneously charged the jury on the elements of Ann Bowers's mental-anguish claim based on a breach of the warranty Wal-Mart provided when it serviced Mrs. Bowers's car. The trial court's mental-anguish jury instruction reads as follows:
 "This Court charges you that before the Plaintiff, Ann Bowers, may recover damages for mental anguish, she must satisfy you that she was in a zone of danger, resulting from any negligence or breach of warranty on the part of the Defendant, Wal-Mart Stores, Inc., if any you find.
"This Court charges you that the term `zone of danger' means a zone in which the Plaintiff, Ann Bowers, felt that she was in immediate risk of physical harm. The Court charges you that should you find that the Plaintiff, Ann Bowers, was in the zone of danger at the time of the fire made the basis of this suit, before the Plaintiff, Ann Bowers, could recover damages for mental anguish, such mental anguish must be shown to be proximately caused by the fear of immediate risk of physical harm."
An award of damages for mental anguish generally is not allowed in breach-of-contract actions in Alabama. Ruiz de Molina v. Merritt FurmanIns. Agency, 207 F.3d 1351 (11th Cir. 2000), citing Vincent v. BlueCross-Blue Shield, Inc., 373 So.2d 1054, 1056 (Ala. 1979).
 "The ground on which the right to recover such damages [for mental anguish] is denied, is that they are too remote, were not within the contemplation of the parties, and that the breach of the contract *Page 69 
is not such as will naturally cause mental anguish. `Yet where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, it is just that damages therefor be taken into consideration and awarded.'"
F. Becker Asphaltum Roofing Co. v. Murphy, 224 Ala. 655, 656, 141 So. 630,631 (1932) (citations omitted). Exceptions to the general rule on the basis noted above have been made in the areas of contracts to construct or repair, or to provide utilities to, a house where the breach impacted the habitability of the house. See Orkin Exterminating Co. v. Donavan,519 So.2d 1330 (Ala. 1988); Alabama Power Co. v. Harmon, 483 So.2d 386
(Ala. 1986); B M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala. 1979). Exceptions have also been made for contracts of carriage, see NashvilleC.St.L. Ry. v. Campbell, 212 Ala. 27, 101 So. 615 (1924); for breach of a contract to deliver a baby, when the baby was stillborn, see Taylor v.Baptist Med. Ctr., Inc., 400 So.2d 369 (Ala. 1981); and for breach of warranty in the sale of a "lemon," a newly manufactured car that frequently broke down at intersections, see Volkswagen of America, Inc.v. Dillard, 579 So.2d 1301, 1304 (Ala. 1991) ("`These cases have not required mental anguish to be corroborated by the presence of physical symptoms; the only requirement in such cases is the presentation of evidence of mental anguish. Thereafter, the question of damages for mental anguish becomes a question of fact for the jury to decide.'" (quoting B M Homes, Inc. v. Hogan, 376 So.2d 667, 671 (Ala. 1979))).
As the Bowerses point out, none of the cases in which exceptional mental-anguish claims were permitted includes the "zone-of-danger" concept as an element of mental-anguish claims in a breach-of-contract or breach-of-warranty case. The zone-of-danger rule is defined as "[t]he doctrine allowing the recovery of damages for negligent infliction of emotional distress if the plaintiff was both located in the dangerous area created by the defendant's negligence and frightened by the risk of harm." Black's Law Dictionary 1612 (7th ed. 1999) (emphasis added).
In fact, it would violate the purpose for which the zone-of-danger rule was created to apply that rule in a breach-of-contract case. The zone-of-danger rule was created to limit the possible plaintiffs who could sue for negligent tortious harm to those who had actually been at risk of physical injury. See Consolidated Rail Corp. v. Gottshall,512 U.S. 532, 534 (1994) ("Even if respondents are correct that the zone of danger test arbitrarily excludes some emotional injury claims, that test best reconciles the concerns motivating the common-law restrictions on recovery for negligently inflicted emotional distress — the potential for a flood of trivial suits, the possibility of fraudulent claims that are difficult to detect, and the specter of unlimited and unpredictable liability — with this Court's FELA jurisprudence.") If not for this legal limitation, anyone who witnessed a tort arising out of negligence could bring a mental-anguish claim, even if he witnessed the tort only remotely, as for example, on television.
Contractual relationships, on the other hand, clearly establish the parties to the contract and establish who has grounds to bring a claim in the event the contract is breached. There is, therefore, no application for the *Page 70 
zone-of-danger rule in the field of contractual relationships. The jury instruction requiring that the jury had to find that Mrs. Bowers was within the zone of danger in order to allow a recovery for mental anguish stemming from a breach of warranty was therefore error.
However, the fact that the instruction was error does not answer the question whether Mrs. Bowers can assert a mental-anguish claim against Wal-Mart for the breach of a maintenance warranty. "In Alabama the general rule is that mental anguish is not a recoverable element of damages arising from breach of contract." B M Homes, Inc. v. Hogan,376 So.2d 667, 671 (Ala. 1979). Speaking of exceptional cases in which Alabama law does allow mental-anguish claims resulting from a breach of contract, the United States Court of Appeals for the Eleventh Circuit has said, "These cases deserve special treatment because it is highly foreseeable that egregious breaches of certain contracts — involving one's home or deceased loved one, for example — will result in significant emotional distress." Ruiz de Molina, 207 F.3d 1351
at 1359-60, citing Sexton v. St. Clair Fed. Sav. Bank, 653 So.2d 959, 962
(Ala. 1995). Except for the identified types of emotionally intertwined cases to which the Eleventh Circuit refers, we have declined to extend emotional-distress damages to contract claims. We have, for example, rejected as an inappropriate basis for a mental-anguish claim the breach of a contract to sell a boat. See Wellcraft Marine v. Zarzour,577 So.2d 414, 419 (Ala. 1990). The Eleventh Circuit, relying on Alabama law, rejected a mental-anguish claim stemming from the breach of an insurance contract. See Ruiz de Molina, supra.
The warranty involved in this case was a warranty to perform proper maintenance on a two-year-old car. While the fire that occurred in this case had a particularly devastating effect for the Bowerses, the contractual duty to properly service the car was not "so coupled with matters of mental concern or solicitude . . . that a breach of that duty will necessarily or reasonably result in mental anguish or suffering. . . ." F. Becker Asphaltum Roofing Co., 224 Ala. at 657. 141 So. at 631. To work backward from the house fire to the car fire and then to conclude that, because those events caused the Bowerses' emotional distress, the breach of the warranty, if indeed there was such a breach, should support mental-anguish claims would be to convert the law from a fixed star that guides us to a result, into something malleable that serves whatever result we might choose to reach.
Thus, although the jury instruction that one must be in the zone of danger to recover on a mental-anguish claim stemming from a breach of warranty was incorrect, that error in this case is subsumed within the rule that a verdict for the defendant concerning liability generally precludes the plaintiff's challenges to the trial court's rulings on issues concerning damages. In Cannon v. Jones, 565 So.2d 32, 32 (Ala. 1990), this Court stated that rule as follows:
 "The jury having found for the defendant on the issue of liability, the issues regarding the extent of damages present no reversible error.
 "`[E]rror in the rejection or admission of evidence going merely to the extent of injury and damages will not work a reversal where, as here, there was a general verdict absolving the defendants from liability.'
 "Broughton v. Kilpatrick 362 So.2d 865, 867 (Ala. 1978), citing Reed v. L. Hammel Dry Goods Co., 215 Ala. 494, 111 So. 237 (1927), and cases cited at 2B Alabama Digest, Appeal Error Key No. 1052(5); see also cases cited at Key No. 1056.4."
The error in the jury instruction on mental-anguish damages was harmless because *Page 71 
Ann Bowers had no legal right to assert a claim for mental anguish stemming from a breach of a warranty of maintenance as to her two-year-old car. That sort of contract is precisely the sort of contract for which the prospect of resulting emotional harm was "too remote, [was] not within the contemplation of the parties, and . . . the breach of the contract is not such as will naturally cause mental anguish." F. BeckerAsphaltum Roofing Co., 224 Ala. at 657, 141 So. at 631.
 III.
The Bowerses next allege that the trial court erred in admitting or excluding certain evidence. The Bowerses allege that the trial court erred in allowing Wal-Mart to introduce into evidence various recall notices and technical service bulletins issued by GM for the make and model of Mrs. Bowers's car. Further, the Bowerses argue that the trial court improperly allowed Wal-Mart to argue the unforeseen nature of the fire while rejecting proffers of rebuttal evidence by the Bowerses and that the trial court erred in allowing Wal-Mart in its cross-examination to refer to the Bowerses' wealth. "[T]he trial court has greatdiscretion in determining whether evidence, even evidence of minor probative value is relevant and whether it should be admitted or excluded." Sweeney v. Purvis, 665 So.2d 926, 930 (Ala. 1995). When evidentiary rulings of the trial court are reviewed on appeal, "rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion." Bama's Best Party Sales, Inc. v. Tupperware, U.S., Inc.,723 So.2d 29, 32 (Ala. 1998), citing Preferred Risk Mut. Ins. Co. v.Ryan, 589 So.2d 165 (Ala. 1991).
After reviewing the evidentiary rulings by the trial court in this case for an abuse of discretion, we conclude that the trial court did not abuse its discretion. The recall notices and technical service bulletins the introduction of which the Bowerses complain were printed in 2000, five years after the fire in this case occurred and seven years after the car was manufactured. However, they specifically address possible defects in the manufacture of the make and model of the car involved in the fire, and were first issued before the fire. The trial court did not abuse its discretion in admitting them.
In their next assertion of error by the trial court, the Bowerses argue that they should have been allowed to admit into evidence testimony from other Wal-Mart customers who were unhappy with the servicing of their cars at a Wal-Mart store. This proffered testimony can be sufficiently distinguished from the Bowerses' case to prevent its admission on relevancy or confusion-of-the-jury grounds under Rule 403, Ala. R. Evid. The testimony of other customers of Wal-Mart automobile service centers that the Bowerses wished to present did not involve any instances of engine fires following servicing by Wal-Mart. Rounding up unsatisfied customers to testify as to situations different from the circumstances in the Bowerses' case does not fit within the pattern-and-practice evidence contemplated by Ala. R. Evid. 404(b).
 "Given the potential for prejudice and the general policy of preclusion, we have required high levels of similarity between the past acts and the present behavior. See Massachusetts Mut. Life Ins. Co. v. Collins, 575 So.2d 1005 (Ala. 1990), cert. denied, 499 U.S. 918 (1991). The acts must be both similar in nature and of substantially the same character. See Bama's Best Party Sales, Inc. v. *Page 72 Tupperware, U.S., Inc., 723 So.2d 29, 33 (Ala. 1998)."
Morris v. Laster, 794 So.2d 1094, 1098 (Ala. 2001). Following this guidance, we conclude that the testimony of the other Wal-Mart customers that the Bowerses sought to introduce into evidence is too removed from the circumstances of this case; therefore, the trial court did not abuse its discretion in excluding that testimony.
Another evidentiary concern raised by the Bowerses is that the trial court erred in allowing evidence referring to the Bowerses' wealth. There is "a general exclusionary rule in Alabama precluding the admission of evidence as to the wealth or poverty of litigants when offered to aggravate or mitigate damages." Charles W. Gamble, McElroy's AlabamaEvidence § 189.05(1) (5th ed. 1996) (footnote omitted). The plaintiffs objected at trial to various references they perceived to be references to their wealth, particularly during the cross-examination of Tony Bowers. The trial court overruled the objection at trial, and nothing in the record indicates that that ruling was erroneous. The questions put to Tony Bowers appear to have been ones attempting to determine Mrs. Bowers's mental state and her ability to function; some of the questions regarded trips the couple had taken and whether Mrs. Bowers had taken any trips alone after the incident. The few questions about the Bowerses ability to relocate after the fire and how their replacement car was registered may have indirectly suggested the Bowerses' financial position, but the trial judge was in the best position to determine the impact of those questions. We, therefore, see no reason to overturn the trial judge's determination as to these questions.
Finally, we find no reversible error in the trial court's allowing Wal-Mart to introduce a fact sheet on the drug Klonopin distributed by the manufacturer of the drug. The plaintiffs argue that this document should not have been admitted because, they say, it was not properly authenticated and it was hearsay. However, Mrs. Bowers placed her mental state at issue by alleging that she had suffered mental anguish, which she claims made her unable to work. Before the fire, she had been taking Klonopin, a drug prescribed for emotional disorders. To show the possible side effects of the drug that could have contributed to Mrs. Bowers's mental state, Wal-Mart offered into evidence the fact sheet the manufacturer distributed with Klonopin. Thus, this evidence was presented to mitigate damages; therefore, it falls within the general rule that a verdict for the defendant as to liability precludes a challenge to rulings on evidentiary issues as to damages. The Court of Civil Appeals stated the rule as follows:
 "Where the verdict and judgment absolve the defendant from any liability to plaintiff, the trial court's erroneous failure to admit evidence or to charge the jury on a matter regarding only the extent of damage allegedly suffered by the plaintiff is harmless error."
East Drive Venture v. McDonnell, 485 So.2d 338, 339 (Ala.Civ.App. 1986), citing McCullough v. L N R.R., 396 So.2d 683 (Ala. 1981). See alsoBrown v. Morris 593 So.2d 59 (Ala. 1991). Therefore, the introduction of the fact sheet related to Klonopin was not reversible error.
 IV.
The Bowerses next argue that the verdict was against the decided preponderance of the evidence, was based on bias and/or sympathy, was not based on legally sufficient evidence, and/or was plainly and palpably wrong. This Court *Page 73 
has held that "a judgment, based upon a jury verdict and sustained by the denial of a post-judgment motion for a new trial, will not be reversed on a `weight of the evidence' ground unless it is `plainly and palpably' wrong." Michael v. Gunnin Pulpwood, Inc., 533 So.2d 588, 589 (Ala. 1988), citing Ashbee v. Brock, 510 So.2d 214 (Ala. 1987).
 "No ground for reversal of a judgment is more carefully scrutinized or rigidly limited than the ground that the verdict of the jury was against the great weight of the evidence. Rather, there is a strong presumption of correctness of a jury verdict in Alabama. . . . An appellate court must review the tendencies of the evidence most favorably to the prevailing party and indulge such inferences as the jury was free to draw."
Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990) (citations omitted).
When we consider the record in a light most favorable to the prevailing party below — Wal-Mart — we find no reason to overturn the jury's verdict. Its verdict is sufficiently supported by the evidence and is not plainly and palpably wrong.
 V.
Finally, the Bowerses argue that the trial court erred in failing to grant a new trial. The decision to grant or to deny a motion for a new trial rests within the sound discretion of the trial court. Hill v.Cherry, 379 So.2d 590 (Ala. 1980). A denial of a motion for a new trial strengthens the presumption of correctness afforded a jury verdict,Osborne v. Cobb, 410 So.2d 396 (Ala. 1982), and the decision of the trial court will not be disturbed unless the verdict is against the preponderance of the evidence or is clearly wrong or unjust. Black BeltWood Co. v. Sessions, 514 So.2d 1249, 1252 (Ala. 1987); see also ShilohConstr. Co. v. Mercury Constr. Corp., 392 So.2d 809 (Ala. 1980). The jury's finding in this case that the Bowerses did not carry their burden of proof is supported by the evidence in the record; therefore, the trial court did not err in refusing to grant a new trial.
 VI.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
Moore, C.J., and Brown, Harwood, and Stuart, JJ., concur.
[1] Some alternative theories that Wal-Mart presented to the experts were based on automobile recalls and service warnings GM issued concerning defects in the type of Cadillac automobile Mrs. Bowers drove.
[2] While the parties alternatively refer to the theory under which the Bowerses hope to preclude Wal-Mart from referring to GM's participation in this accident or this case as "a sense of fairness," "equitable estoppel," "judicial estoppel," and "preclusion," it appears that the Bowerses are actually making a collateral-estoppel argument. Equitable estoppel is defined as "a defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." See Black's Law Dictionary 571 (7th ed. 1999). "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211 (2000). Collateral estoppel, also termed issue preclusion, is defined as "[a]n affirmative defense barring a party from relitigating an issue determined against that party in an earlier action, even if the second action differs significantly from the first one." See Black's Law Dictionary 256 (7th ed. 1999). Given that the Bowerses hope to bar Wal-Mart from questioning their experts about possible defects in the GM automobile, it appears that the Bowerses are asserting collateral estoppel.