PER CURIAM.
Following a two-day trial in May 2013, a Bullock County jury returned a $450,000 verdict in favor of Michael Shepherd on a breaeh-of-warranty claim he asserted against Barko Hydraulics, LLC (“Barko”). Barko appeals the judgment entered on that verdict. We reverse and remand.

I. Facts and Procedural History

On September 12, 2008, Shepherd purchased a Barko 495ML knuckle boom loader (“the 495ML loader”) from G & S Equipment Company in Prattville for use in his logging operation.[1] The price of the 495ML loader was $202,274, and Shepherd financed the purchase through Wells Fargo, agreeing to make 60 monthly payments of $4,039. In conjunction with Shepherd’s purchase of the 495ML loader, Barko issued a warranty. That warranty provided, in part:
“Barko Hydraulics, LLC (‘Barko’), warrants to the distributor and/or original Buyer each new hydraulic knuckle *307 boom loader ... including attachments and accessories thereto. (‘Product’) sold by Barko is to be free from defects in material and workmanship under normal use, maintenance and service.
“Barko will cause any major structural component of a Barko product covered by this warranty which proves to be defective in material or workmanship under normal use, maintenance and service within three (3) years or 6,000 hours, whichever occurs first from first day in service ..., to be replaced without charge with a new or repaired part, at Barko[’s] election. Barko also will cause the labor to remove any such defective part and to install the new or repaired part to be provided without charge to the owner of said Barko product. The parts and labor to meet this warranty will be furnished by designated Barko distributor.
“Barko will cause all other parts of product covered by this warranty which proves to be defective in material or workmanship under normal use, maintenance and service within one (1) year or 2,000 hours, whichever occurs first from first day in service ..., to be replaced, without charge, with a new or repaired part, at Barko[’s] election. Barko also will cause the labor to remove any such defective part and to install the new or repaired part to be provided without charge to the owner of said Barko product. The parts and labor to meet this warranty will be furnished by designated Barko distributor.”
The warranty excluded coverage for “[djamage due to failure to maintain or use the Barko product or part according to manuals, schedules, or good practice.” The warranty limited Barko’s potential liability under the warranty as follows:
“Remedies available to any person claiming under this warranty are exclusive and expressly limited to obtaining the parts and the labor, where applicable, in accordance with terms of this warranty.
“Barko[’s] liability for losses, damages, or expenses of any kind arising from the design, manufacture or sale of the product covered by this warranty, whether based on warranty, negligence, contract, tort or otherwise, is limited to an amount not exceeding the cost of correcting the defects as herein provided, and, at the expiration of the applicable warranty period, all such liability shall terminate.
“Barko shall in no event be liable for incidental, consequential, or special damages [for] losses of use of the Barko product, a loss or damage to property other than the Barko product, a loss of profits or other commercial loss, or any special or consequential damages (except liability for consequential damages which by law may not be disclaimed).”
Finally, the warranty stated that it was issued “in lieu of all other warranties express or implied, statutory, written or oral” and that there was “no implied warranty of merchantability or fitness for a particular purpose.” Shepherd signed a receipt indicating that he understood the warranty and the maintenance requirements of the 495ML loader.
Shepherd testified that he was initially pleased with the performance of the 495ML loader after incorporating it into his logging operation. Shepherd testified, however, that after approximately four months of use the 495ML loader began having problems with its hydraulic system and with fuel consumption. Shepherd testified at trial that he informed G & S Equipment about these problems with the 495ML loader numerous times. G & S Equipment’s owner, Mike Guy, testified that G & S Equipment was not notified of *308 all of these problems. On behalf of Barko, G & S Equipment serviced the 495ML loader several times during Shepherd’s first year of ownership, replacing the alternator, a turntable bearing, an air-heater contact switch twice, all under the warranty and without cost to Shepherd. Guy testified at trial that these were fairly minor repairs and that they were unrelated to the hydraulic system.
In August 2009, Shepherd brought the 495ML loader to G & S Equipment for it to complete some outstanding warranty repairs. At the time, the 495ML loader’s clock was at approximately 1900 hours; thus, only 1 month or 100 hours remained before the warranty expired. G & S Equipment replaced the swivel, replaced the solenoids, and repaired the joysticks used by the operator to control the equipment on the loader. Guy testified at trial that those repairs were both common and relatively minor. Guy also testified, however, that during the course of making those repairs, his shop noticed that Shepherd’s maintenance of the 495ML loader was lacking — specifically moving parts were not being greased and both hydraulic filters and air filters were not being changed in accordance with the manufacturer’s recommended schedule. Both Shepherd and his employee, George Oliver, however, disputed the idea that the 495ML loader was not being properly maintained, testifying that they regularly maintained it in a fashion similar to every other piece of logging equipment they had used in their many years — approximately 20 and 30 years, respectively — of working in the logging industry. Shepherd also emphasized that G & S Equipment’s written service records do not indicate that the 495ML loader was not being properly maintained.
In November 2010, when the 495ML loader had approximately 4,300 hours on its clock, Shepherd transported it to G & S Equipment for repairs after the hydraulic pumps began making noise. G & S Equipment confirmed that the hydraulic pumps had failed and notified Shepherd that the needed repairs, costing approximately $10,000, would not be covered under the warranty because the warranty period had expired. At Shepherd’s request, G & S Equipment contacted Barko, which confirmed that it would not authorize or reimburse G & S Equipment for making the needed repair because of the expiration of the warranty. At that point, Shepherd told G & S Equipment that he could not afford to pay for the repairs to the 495ML loader, nor could he continue to meet his obligation to Wells Fargo. He therefore left the 495ML loader with G & S Equipment and apprised Wells Fargo of its location and of his intention to make no further payments on it. Wells Fargo subsequently repossessed the 495ML loader, sold it, and obtained a $124,184 deficit judgment against Shepherd.
On January 28, 2011, Shepherd sued Barko, G & S Equipment, and Cummins Mid-South, LLC, the manufacturer of certain component parts of the 495ML loader, asserting fraud, negligence and/or wantonness, and multiple breach-of-warranty claims. Shepherd sought both compensatory damages for lost profits and mental anguish and punitive damages. Ultimately, G & S Equipment and Cummins Mid-South were dismissed from the action, and, during the course of the trial, all of Shepherd’s claims against Barko except a breach-of-express-warranty claim were withdrawn or dismissed. On May 2, 2013, the breach-of-express-warranty claim was submitted to the jury following a two-day trial and, after the jury returned a $450,000 verdict in favor of Shepherd and against Barko, the trial court entered a judgment consistent with the verdict. Barko’s subsequent postjudgment motion renewing its previous motion for a judg *309 ment as a matter of law or, in the alternative, for a new trial was denied by the trial court on August 29, 2013; on September 23, 2013, Barko filed its notice of appeal to this Court.

II. Standard of Review

On appeal, Barko argues that the trial court erred by denying Barko’s motion for a judgment as a matter of law on Shepherd’s breach-of-express-warranty claim and by allowing the jury to award damages for mental anguish and compensatory damages exceeding the amount it would have cost to repair the 495ML loader. We review Barko’s first argument concerning its motion for judgment as a matter of law in accordance with the following standard of review:
“When reviewing a ruling on a motion for a [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a [judgment as a matter of law]. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a [judgment as a matter of law]. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a [judgment as a matter of law], this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id.”
Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala.2003).
As to Barko’s second argument regarding damages, generally, the assessment of damages is within the sole province of the jury. This Court will not substitute its judgment for that of the jury and will not disturb a damages award unless the award is the product of bias, prejudice, improper motive or influence or was reached under a mistake of law or in disregard of the facts. See, e.g., Daniels v. East Alabama Paving, Inc., 740 So.2d 1033, 1050 (Ala.1999).

III. Analysis

A. Breach of Express Warranty

Barko argues that Shepherd’s breach-of-express-warranty claim should never have been submitted to the jury because, it says, Shepherd failed to adduce substantial evidence indicating that the hydraulic pumps stopped working on the 495ML loader because of a defect. More particularly, Barko contends that, to support a breach-of-express-warranty claim, a plaintiff must present expert testimony detailing the defect that caused the product to fail. Alternatively, Barko argues that there was substantial evidence showing that Shepherd had not maintained the 495ML loader in accordance with the factory-suggested schedule. Barko also argues that the warranty period had expired when the hydraulic pumps failed.
Shepherd counters that he presented substantial evidence showing that Barko had breached the express warranty. Specifically, Shepherd says that he presented substantial evidence showing that the 495ML loader did not preform as warrant *310 ed, especially when Barko was given notice .of the problems with the 495ML loader but was unable, or unwilling, to correct those problems. Shepherd contends that the evidence as to whether inadequate maintenance caused the 495ML loader to fail was disputed and that, therefore, the issue whether improper maintenance of the 495ML loader precludes any breach-of-warranty claim was proper for determination by the jury. Shepherd also contends that there is no merit to Barko’s argument that the warranty period had expired when the pumps failed because Shepherd had repeatedly reported problems with the 495ML loader and Barko did not, or could not, repair those problems.
“Express warranties should be treated like any other type of contract and interpreted according to general contract principles.” See Ex parte Miller, 693 So.2d 1372, 1376 (Ala.1997) (citing 2 Alphonse M. Squillante & John R. Fonseca, Williston on Sales § 15-9 (4th ed.1974)). “In Alabama, the crux of all express warranty claims is that the goods did not conform to the warranty.” Ex parte Miller, 693 So.2d at 1376. Barko warranted the 495ML loader to be free from defects “in material or workmanship under normal use, maintenance and service.”
Barko asserts that Shepherd failed to prove that there was any defect in the 495ML loader. The argument Barko advances is that, like the plaintiffs in actions based on the theory of products liability, the plaintiff asserting a breach-of-warranty claim must establish the presence of a specific defect. We conclude that the identification of an existing defect is not essential to recovery upon an express warranty. See Ex parte Miller, 693 So.2d at 1376,[2] Yarbrough v. Sears, Roebuck & Co., 628 So.2d 478, 483 (Ala.1993), and Shell v. Union Oil Co., 489 So.2d 569, 571 (Ala.1986).[3] It is sufficient if, as here, the evidence shows, either directly or by permissible inference, that the 495ML loader was defective in its performance or function or that it otherwise failed to conform to the warranty.
In this case, the evidence showed that, after four months of use, the 495ML loader began to overheat and to use excessive fuel and hydraulic fluid. Ultimately, after the 495ML loader was serviced repeatedly, the hydraulic pumps stopped working. “[W]e have held that the application of an express warranty is a question of fact for the trier of fact. Ex parte Miller, 693 So.2d 1372 (Ala.1997).” Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc., 901 So.2d 84, 104 (Ala.2004). The parties submitted conflicting evidence. Therefore, the trial court properly submitted this issue to the jury for resolution.
In the alternative, Barko maintains that Shepherd’s improper maintenance of the 495ML loader precludes any breach-of-warranty claim. We are not persuaded by Barko’s argument in that regard. The evidence was conflicting as to whether Shepherd properly maintained the 495ML loader, and that issue was likewise proper for jury resolution.
Guy, G & S Equipment’s owner and Barko’s Prattville dealership representative, testified that his shop noticed that *311 Shepherd’s maintenance of the 495ML loader was not in accord with the manufacturer’s specifications. Guy explained that moving parts were not being greased and that both hydraulic filters and air filters were not being changed in accordance with the manufacturer’s recommended schedule. Both Shepherd and his employee, Oliver, however, disputed that the 495ML loader was not properly maintained. Shepherd and Oliver both testified that they regularly maintained the 495ML loader in a fashion similar to every other piece of logging equipment they had used in their many years — approximately 20 and 30 years, respectively — of working in the logging industry. Shepherd emphasized that the written service records failed to indicate that the 495ML loader was not being properly maintained. Based on conflicting evidence, whether improper maintenance resulted in the failure of the hydraulic pumps in the 495ML loader and precluded any breach-of-warranty claim was a matter for the jury to determine. See, e.g., Royal Typewriter Co. v. Xerographic Supplies Corp., 719 F.2d 1092, 1103 (11th Cir.1983) (providing that whether improper maintenance precluded any breach-of-warranty claim was a matter for the jury to determine).
Regarding Barko’s contention that the warranty period had already expired when the hydraulic pumps failed, we are likewise not persuaded. Barko had an obligation under the warranty. After four months of use, the 495ML loader began to overheat and to use excessive fuel and hydraulic fluid. After the 495ML loader was repeatedly serviced, the hydraulic pumps stopped working. Barko failed to correct the problems with the 495ML loader after repeated complaints and servicings. Given the numerous attempts at repair over the extended period, the jury could properly have concluded that the 495ML loader had not been repaired and that the warranty had failed of its essential purpose.[4] Barko breached its contract during the warranty period. As is the case with any contract that is breached, Shepherd’s damages were precipitated by Barko’s failure to perform. Mere passage of time did not cure or excuse that breach or failure to perform. Accordingly, the trial court did not err in submitting the breach-of-express-warranty claim to the jury.

B. Damages

Barko argues that Shepherd’s recovery was limited to the cost to repair of the 495ML loader. Barko also argues that the trial court erred in instructing the jury on mental-anguish damages. Shepherd says that, because the warranty failed of its essential purpose, he was entitled to an award of damages as allowed by the Uniform Commercial Code (the “UCC”), as well as damages, for mental anguish. Shepherd claims that Barko failed to preserve its claim that the trial court erred in in *312 structing the jury on mental-anguish damages.[5]
The measure of damages for breach of warranty arising from the sale of goods is governed by § 7-2-714 and § 7-2-715, Ala.Code 1975. Section 7-2-714(2) provides, in part:
“(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount....”
Section 7-2-715 provides for the recovery of incidental and consequential damages in appropriate cases. It provides, in part:
“(1) Incidental damages resulting from the seller’s breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
“(2) Consequential damages resulting from the seller’s breach include:
“(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise.... ”
Generally, mental-anguish damages are not recoverable in a breach-of-contract action. Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 68-70 (Ala.2001). This Court, however, recognized in Bowers a limited mental-concern or solicitude exception to the general rule. Id.
In this case, under the UCC, the jury could award the difference between the actual value of the 495ML loader and its value had it been as warranted and incidental or consequential damages. However, mental-anguish damages are not recoverable under the facts of this case. Shepherd alleged that he lost his business because of the problems with, and the failure of, the 495ML loader. Shepherd claimed that the loss of his logging business caused his divorce, resulting in his spending less time with his daughter. Here, Barko’s contractual duty to Shepherd was not “ ‘so coupled with matters of mental concern or solicitude ... that a breach of that duty will necessarily or reasonably result in mental anguish or suffering....’” F. Becker Asphaltum Roofing Co. v. Murphy, 224 Ala. 655, 657, 141 So. 630, 631 (1932) (quoting 8 R.C.L. p 529, § 83).[6] There must be some nexus between the mental-anguish damages and the intention and contemplation of the parties at the time the contract was made; there is not substantial evidence to support the award of such damages under the circumstances of this case.
In this case, the jury returned a general verdict. Because general damages were awarded, there is no way to determine the amount the jury attributed to each type of damages, some of which were properly awardable, and some of which were not. Accordingly; we reverse the judgment in its entirety and remand the case for a new trial.

*313
IV. Conclusion

We reverse the judgment entered against Barko, and we remand the case for entry of an order granting Barko’s motion for a new trial.
REVERSED AND REMANDED WITH DIRECTIONS.
MOORE, C.J., and BOLIN and MAIN, JJ., concur.
MURDOCK, J., concurs specially.
SHAW, J., concurs in the result.
PARKER and BRYAN, JJ., concur in part and dissent in part.
STUART, J., concurs in the result in part and concurs in part and dissents in part as to the rationale.

. As described in the record, the 495ML loader was used to pick up trees and load them onto a truck after the trees were felled by a "cutter” such as a "feller buncher” and then dragged to the loading area by a "skidder.”

. Explaining that " ‘[c]are must be taken to avoid elevating a defect in the goods to the status of an essential element that must be shown in order to recover for a breach of an express warranty.’ Ronald A. Anderson, Anderson on the Uniform Commercial Code, § 2-313:217 (3d ed.1995)."

. Yarbrough and Shell recognize the clear distinction in proof between Alabama Extended Manufacturer's Liability Doctrine law and Uniform Commercial Code law.

. See, e.g., Massey-Ferguson, Inc. v. Laird, 432 So.2d 1259, 1264 (Ala.1983) (holding that “[gjiven the numerous attempts at repair over the extended time period, the jury' could properly conclude (as it presumably did, since it obviously awarded consequential damages) that the combine was not repaired within a reasonable time and that the limited warranty had failed of its essential purpose”); Courtesy Ford Sales, Inc. v. Farrior, 53 Ala.App. 94, 298 So.2d 26, 33 (Ala.Civ.App.1974), superseded by rule on other grounds, see Arnold v. Campbell, 398 So.2d 301 (Ala.Civ.App.1981) (stating that, when a manufacturer limits its obligation to the repair and replacement of defective parts and repeatedly fails to correct the defect as promised within a reasonable time, it is liable for the breach of that promise as a breach of warranty); Tiger Motor Co. v. McMurtry, 284 Ala. 283, 290, 224 So.2d 638, 644 (1969) (providing that a seller does not have unlimited time to repair and/or to replace parts under a warranty).

. Our review of the record indicates that Bar-ko adequately preserved the mental-anguish-instruction issue for appellate review.

. See Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 68-70 (Ala.2001), and its progeny for a discussion of cases in which exceptions to the general rule have been upheld.