Rel: 09/26/2014

**Notice**: This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

————————————

### 1121479

————————————

**Barko Hydraulics, LLC**

**v.**

**Michael Shepherd**

**Appeal from Bullock Circuit Court**
**(CV-11-900010)**

PER CURIAM.

Following a two-day trial in May 2013, a Bullock County jury returned a $450,000 verdict in favor of Michael Shepherd on a breach-of-warranty claim he asserted against Barko

Hydraulics, LLC ("Barko"). Barko appeals the judgment entered on that verdict. We reverse and remand.

## I. Facts and Procedural History

On September 12, 2008, Shepherd purchased a Barko 495ML knuckle boom loader ("the 495ML loader") from G&S Equipment Company in Prattville for use in his logging operation.[1] The price of the 495ML loader was $202,274, and Shepherd financed the purchase through Wells Fargo, agreeing to make 60 monthly payments of $4,039. In conjunction with Shepherd's purchase of the 495ML loader, Barko issued a warranty. That warranty provided, in part:

> "Barko Hydraulics, LLC ('Barko'), warrants to the distributor and/or original Buyer each new hydraulic knuckle boom loader ... including attachments and accessories thereto. ('Product') sold by Barko is to be free from defects in material and workmanship under normal use, maintenance and service.
>
> "Barko will cause any major structural component of a Barko product covered by this warranty which proves to be defective in material or workmanship under normal use, maintenance and service within three (3) years or 6,000 hours, whichever occurs first from first day in service ..., to be replaced

---

[1]As described in the record, the 495ML loader was used to pick up trees and load them onto a truck after the trees were felled by a "cutter" such as a "feller buncher" and then dragged to the loading area by a "skidder."

1121479

without charge with a new or repaired part, at Barko['s] election. Barko also will cause the labor to remove any such defective part and to install the new or repaired part to be provided without charge to the owner of said Barko product. The parts and labor to meet this warranty will be furnished by designated Barko distributor.

"Barko will cause all other parts of product covered by this warranty which proves to be defective in material or workmanship under normal use, maintenance and service within one (1) year or 2,000 hours, whichever occurs first from first day in service ..., to be replaced, without charge, with a new or repaired part, at Barko['s] election. Barko also will cause the labor to remove any such defective part and to install the new or repaired part to be provided without charge to the owner of said Barko product. The parts and labor to meet this warranty will be furnished by designated Barko distributor."

The warranty excluded coverage for "[d]amage due to failure to maintain or use the Barko product or part according to manuals, schedules, or good practice." The warranty limited Barko's potential liability under the warranty as follows:

"Remedies available to any person claiming under this warranty are exclusive and expressly limited to obtaining the parts and the labor, where applicable, in accordance with terms of this warranty.

"Barko['s] liability for losses, damages, or expenses of any kind arising from the design, manufacture or sale of the product covered by this warranty, whether based on warranty, negligence, contract, tort or otherwise, is limited to an amount not exceeding the cost of correcting the defects as herein provided, and, at the expiration of the

3

1121479

applicable warranty period, all such liability shall
terminate.

"Barko shall in no event be liable for
incidental, consequential, or special damages [for]
losses of use of the Barko product, a loss or damage
to property other than the Barko product, a loss of
profits or other commercial loss, or any special or
consequential damages (except liability for
consequential damages which by law may not be
disclaimed)."

Finally, the warranty stated that it was issued "in lieu of
all other warranties express or implied, statutory, written or
oral" and that there was "no implied warranty of
merchantability or fitness for a particular purpose."
Shepherd signed a receipt indicating that he understood the
warranty and the maintenance requirements of the 495ML loader.

Shepherd testified that he was initially pleased with the
performance of the 495ML loader after incorporating it into
his logging operation. Shepherd testified, however, that
after approximately four months of use the 495ML loader began
having problems with its hydraulic system and with fuel
consumption. Shepherd testified at trial that he informed G&S
Equipment about these problems with the 495ML loader numerous
times. G&S Equipment's owner, Mike Guy, testified that G&S
Equipment was not notified of all of these problems. On

4

1121479

behalf of Barko, G&S Equipment serviced the 495ML loader several times during Shepherd's first year of ownership, replacing the alternator, a turntable bearing, an air-heater contact switch twice, all under the warranty and without cost to Shepherd. Guy testified at trial that these were fairly minor repairs and that they were unrelated to the hydraulic system.

In August 2009, Shepherd brought the 495ML loader to G&S Equipment for it to complete some outstanding warranty repairs. At the time, the 495ML loader's clock was at approximately 1900 hours; thus, only 1 month or 100 hours remained before the warranty expired. G&S Equipment replaced the swivel, replaced the solenoids, and repaired the joysticks used by the operator to control the equipment on the loader. Guy testified at trial that those repairs were both common and relatively minor. Guy also testified, however, that during the course of making those repairs, his shop noticed that Shepherd's maintenance of the 495ML loader was lacking -- specifically moving parts were not being greased and both hydraulic filters and air filters were not being changed in accordance with the manufacturer's recommended schedule. Both

5

1121479

Shepherd and his employee, George Oliver, however, disputed the idea that the 495ML loader was not being properly maintained, testifying that they regularly maintained it in a fashion similar to every other piece of logging equipment they had used in their many years -- approximately 20 and 30 years, respectively -- of working in the logging industry. Shepherd also emphasized that G&S Equipment's written service records do not indicate that the 495ML loader was not being properly maintained.

In November 2010, when the 495ML loader had approximately 4,300 hours on its clock, Shepherd transported it to G&S Equipment for repairs after the hydraulic pumps began making noise. G&S Equipment confirmed that the hydraulic pumps had failed and notified Shepherd that the needed repairs, costing approximately $10,000, would not be covered under the warranty because the warranty period had expired. At Shepherd's request, G&S Equipment contacted Barko, which confirmed that it would not authorize or reimburse G&S Equipment for making the needed repair because of the expiration of the warranty. At that point, Shepherd told G&S Equipment that he could not afford to pay for the repairs to the 495ML loader, nor could

6

he continue to meet his obligation to Wells Fargo. He therefore left the 495ML loader with G&S Equipment and apprised Wells Fargo of its location and of his intention to make no further payments on it. Wells Fargo subsequently repossessed the 495ML loader, sold it, and obtained a $124,184 deficit judgment against Shepherd.

On January 28, 2011, Shepherd sued Barko, G&S Equipment, and Cummins Mid-South, LLC, the manufacturer of certain component parts of the 495ML loader, asserting fraud, negligence and/or wantonness, and multiple breach-of-warranty claims. Shepherd sought both compensatory damages for lost profits and mental anguish and punitive damages. Ultimately, G&S Equipment and Cummins Mid-South were dismissed from the action, and, during the course of the trial, all of Shepherd's claims against Barko except a breach-of-express-warranty claim were withdrawn or dismissed. On May 2, 2013, the breach-of-express-warranty claim was submitted to the jury following a two-day trial and, after the jury returned a $450,000 verdict in favor of Shepherd and against Barko, the trial court entered a judgment consistent with the verdict. Barko's subsequent postjudgment motion renewing its previous motion

for a judgment as a matter of law or, in the alternative, for a new trial was denied by the trial court on August 29, 2013; on September 23, 2013, Barko filed its notice of appeal to this Court.

## II.  Standard of Review

On appeal, Barko argues that the trial court erred by denying Barko's motion for a judgment as a matter of law on Shepherd's breach-of-express-warranty claim and by allowing the jury to award damages for mental anguish and compensatory damages exceeding the amount it would have cost to repair the 495ML loader.  We review Barko's first argument concerning its motion for judgment as a matter of law in accordance with the following standard of review:

> "When reviewing a ruling on a motion for a [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a [judgment as a matter of law]. Palm Harbor Homes, Inc. v. Crawford, 689 So. 2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So. 2d 1350 (Ala. 1992).  The nonmovant must have presented substantial evidence in order to withstand a motion for a [judgment as a matter of law].  See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989).  A reviewing court must

8

> determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So. 2d at 1353. In reviewing a ruling on a motion for a [judgment as a matter of law], this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id."

Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So. 2d 1143, 1152 (Ala. 2003).

As to Barko's second argument regarding damages, generally, the assessment of damages is within the sole province of the jury. This Court will not substitute its judgment for that of the jury and will not disturb a damages award unless the award is the product of bias, prejudice, improper motive or influence or was reached under a mistake of law or in disregard of the facts. See, e.g., Daniels v. East Alabama Paving, Inc., 740 So. 2d 1033, 1050 (Ala. 1999).

### III. Analysis

#### A. Breach of Express Warranty

Barko argues that Shepherd's breach-of-express-warranty claim should never have been submitted to the jury because, it says, Shepherd failed to adduce substantial evidence indicating that the hydraulic pumps stopped working on the

9

495ML loader because of a defect. More particularly, Barko contends that, to support a breach-of-express-warranty claim, a plaintiff must present expert testimony detailing the defect that caused the product to fail. Alternatively, Barko argues that there was substantial evidence showing that Shepherd had not maintained the 495ML loader in accordance with the factory-suggested schedule. Barko also argues that the warranty period had expired when the hydraulic pumps failed.

Shepherd counters that he presented substantial evidence showing that Barko had breached the express warranty. Specifically, Shepherd says that he presented substantial evidence showing that the 495ML loader did not preform as warranted, especially when Barko was given notice of the problems with the 495ML loader but was unable, or unwilling, to correct those problems. Shepherd contends that the evidence as to whether inadequate maintenance caused the 495ML to fail was disputed and that, therefore, the issue whether improper maintenance of the 495ML loader precludes any breach-of-warranty claim was proper for determination by the jury. Shepherd also contends that there is no merit to Barko's argument that the warranty period had expired when the pumps

1121479

failed because Shepherd had repeatedly reported problems with the 495ML loader and Barko did not, or could not, repair those problems.

"Express warranties should be treated like any other type of contract and interpreted according to general contract principles." See Ex parte Miller, 693 So. 2d 1372, 1376 (Ala. 1997) (citing 2 Alphonse M. Squillante & John R. Fonseca, Williston on Sales § 15-9 (4th ed. 1974)). "In Alabama, the crux of all express warranty claims is that the goods did not conform to the warranty." Ex parte Miller, 693 So. 2d at 1376. Barko warranted the 495ML loader to be free from defects "in material or workmanship under normal use, maintenance and service."

Barko asserts that Shepherd failed to prove that there was any defect in the 495ML loader. The argument Barko advances is that, like the plaintiffs in actions based on the theory of products liability, the plaintiff asserting a breach-of-warranty claim must establish the presence of a specific defect. We conclude that the identification of an existing defect is not essential to recovery upon an express

11

1121479

warranty.  See <u>Ex parte Miller</u>, 693 So. 2d at 1376,[2] <u>Yarbrough v. Sears, Roebuck & Co.</u>, 628 So. 2d 478, 483 (Ala. 1993), and <u>Shell v. Union Oil Co.</u>, 489 So. 2d 569, 571 (Ala. 1986).[3]  It is sufficient if, as here, the evidence shows, either directly or by permissible inference, that the 495ML loader was defective in its performance or function or that it otherwise failed to conform to the warranty.

In this case, the evidence showed that, after four months of use, the 495ML loader began to overheat and to use excessive fuel and hydraulic fluid.  Ultimately, after the 495ML loader was serviced repeatedly, the hydraulic pumps stopped working.  "[W]e have held that the application of an express warranty is a question of fact for the trier of fact. <u>Ex parte  Miller</u>, 693 So. 2d 1372 (Ala. 1997)." <u>Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc.</u>, 901 So. 2d 84, 104 (Ala. 2004).  The parties submitted conflicting evidence.

_____

[2]Explaining that "'[c]are must be taken to avoid elevating a defect in the goods to the status of an essential element that must be shown in order to recover for a breach of an express warranty.'  Ronald A. Anderson, <u>Anderson on the Uniform Commercial Code</u>, § 2-313:217 (3d ed. 1995))."

[3]<u>Yarbrough</u> and <u>Shell</u> recognize the clear distinction in proof between Alabama Extended Manufacturer's Liability Doctrine law and Uniform Commercial Code law.

Therefore, the trial court properly submitted this issue to the jury for resolution.

In the alternative, Barko maintains that Shepherd's improper maintenance of the 495ML loader precludes any breach-of-warranty claim. We are not persuaded by Barko's argument in that regard. The evidence was conflicting as to whether Shepherd properly maintained the 495ML loader, and that issue was likewise proper for jury resolution.

Guy, G&S Equipment's owner and Barko's Prattville dealership representative, testified that his shop noticed that Shepherd's maintenance of the 495ML loader was not in accord with the manufacturer's specifications. Guy explained that moving parts were not being greased and that both hydraulic filters and air filters were not being changed in accordance with the manufacturer's recommended schedule. Both Shepherd and his employee, Oliver, however, disputed that the 495ML loader was not properly maintained. Shepherd and Oliver both testified that they regularly maintained the 495ML loader in a fashion similar to every other piece of logging equipment they had used in their many years -- approximately 20 and 30 years, respectively -- of working in the logging industry.

1121479

Shepherd emphasized that the written service records failed to indicate that the 495ML loader was not being properly maintained. Based on conflicting evidence, whether improper maintenance resulted in the failure of the hydraulic pumps in the 495ML loader and precluded any breach-of-warranty claim was a matter for the jury to determine. See, e.g., Royal Typewriter Co. v. Xerographic Supplies Corp., 719 F.2d 1092, 1103 (11th Cir. 1983) (providing that whether improper maintenance precluded any breach-of-warranty claim was a matter for the jury to determine).

Regarding Barko's contention that the warranty period had already expired when the hydraulic pumps failed, we are likewise not persuaded. Barko had an obligation under the warranty. After four months of use, the 495ML loader began to overheat and to use excessive fuel and hydraulic fluid. After the 495ML loader was repeatedly serviced, the hydraulic pumps stopped working. Barko failed to correct the problems with the 495ML loader after repeated complaints and servicings. Given the numerous attempts at repair over the extended period, the jury could properly have concluded that the 495ML loader had not been repaired and that the warranty had failed

14

of its essential purpose.[4] Barko breached its contract during the warranty period. As is the case with any contract that is breached, Shepherd's damages were precipitated by Barko's failure to perform. Mere passage of time did not cure or excuse that breach or failure to perform. Accordingly, the trial court did not err in submitting the breach-of-express-warranty claim to the jury.

## B. Damages

Barko argues that Shepherd's recovery was limited to the cost to repair of the 495ML loader. Barko also argues that the trial court erred in instructing the jury on mental-anguish damages. Shepherd says that, because the warranty

---

[4]See, e.g., Massey-Ferguson, Inc. v. Laird, 432 So. 2d 1259, 1264 (Ala. 1983) (holding that "[g]iven the numerous attempts at repair over the extended time period, the jury could properly conclude (as it presumably did, since it obviously awarded consequential damages) that the combine was not repaired within a reasonable time and that the limited warranty had failed of its essential purpose"); Courtesy Ford Sales, Inc. v. Farrior, 53 Ala. App. 94, 298 So. 2d 26, 33 (Ala. Civ. App. 1974), superseded by rule on other grounds, see Arnold v. Campbell, 398 So. 2d 301 (Ala. Civ. App. 1981) (stating that, when a manufacturer limits its obligation to the repair and replacement of defective parts and repeatedly fails to correct the defect as promised within a reasonable time, it is liable for the breach of that promise as a breach of warranty); Tiger Motor Co. v. McMurtry, 284 Ala. 283, 290, 224 So. 2d 638, 644 (1969) (providing that a seller does not have unlimited time to repair and/or to replace parts under a warranty).

1121479

failed of its essential purpose, he was entitled to an award of damages as allowed by the Uniform Commercial Code (the "UCC"), as well as damages for mental anguish. Shepherd claims that Barko failed to preserve its claim that the trial court erred in instructing the jury on mental-anguish damages.[5]

The measure of damages for breach of warranty arising from the sale of goods is governed by § 7-2-714 and § 7-2-715, Ala. Code 1975. Section 7-2-714(2) provides, in part:

>    "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount ...."

Section 7-2-715 provides for the recovery of incidental and consequential damages in appropriate cases. It provides, in part:

>    "(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and

---

[5]Our review of the record indicates that Barko adequately preserved the mental-anguish-instruction issue for appellate review.

16

any other reasonable expense incident to the delay or other breach.

"(2) Consequential damages resulting from the seller's breach include:

"(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise ...."

Generally, mental-anguish damages are not recoverable in a breach-of-contract action. Bowers v. Wal-Mart Stores, Inc., 827 So. 2d 63, 68-70 (Ala. 2001). This Court, however, recognized in Bowers a limited mental-concern or solicitude exception to the general rule. Id.

In this case, under the UCC, the jury could award the difference between the actual value of the 495ML loader and its value had it been as warranted and incidental or consequential damages. However, mental-anguish damages are not recoverable under the facts of this case. Shepherd alleged that he lost his business because of the problems with, and the failure of, the 495ML loader. Shepherd claimed that the loss of his logging business caused his divorce, resulting in his spending less time with his daughter. Here, Barko's contractual duty to Shepherd was not "'so coupled with

matters of mental concern or solicitude ... that a breach of that duty will necessarily or reasonably result in mental anguish or suffering ....'" F. Becker Asphaltum Roofing Co. v. Murphy, 224 Ala. 655, 657, 141 So. 630, 631 (1932)(quoting 8 R.C.L. p 529, § 83).[6] There must be some nexus between the mental-anguish damages and the intention and contemplation of the parties at the time the contract was made; there is not substantial evidence to support the award of such damages under the circumstances of this case.

In this case, the jury returned a general verdict. Because general damages were awarded, there is no way to determine the amount the jury attributed to each type of damages, some of which were properly awardable, and some of which were not. Accordingly, we reverse the judgment in its entirety and remand the case for a new trial.

## IV. Conclusion

We reverse the judgment entered against Barko, and we remand the case for entry of an order granting Barko's motion for a new trial.

---

[6]See Bowers v. Wal-Mart Stores, Inc., 827 So. 2d 63, 68-70 (Ala. 2001), and its progeny for a discussion of cases in which exceptions to the general rule have been upheld.

1121479

REVERSED AND REMANDED WITH DIRECTIONS.

Moore, C.J., and Bolin and Main, JJ., concur.

Murdock, J., concurs specially.

Shaw, J., concurs in the result.

Parker and Bryan, JJ., concur in part and dissent in part.

Stuart, J., concurs in the result in part and concurs in part and dissents in part as to the rationale.

1121479

MURDOCK, Justice (concurring specially).

I concur in the main opinion, as well as in Justice Shaw's special writing regarding consequential and incidental damages. For its part, the main opinion holds that it is not necessary for a purchaser making a warranty claim under the Uniform Commercial Code to present expert testimony or other evidence to explain the specific defect giving rise to a warranty claim and that "[i]t is sufficient if, as here, the evidence shows, either directly or by permissible inference, that the 495ML loader was defective in its performance or function or that it otherwise failed to conform to the warranty." ___ So. 3d at ___. I agree with this statement in the context presented here, where the evidence of a failure is coupled with evidence upon which a jury could find that the purchaser properly maintained and used the product or that any deficiency in the maintenance or use was not the cause of the failure of the product. Were we to hold otherwise based on Ex parte Miller, 693 So. 2d 1372, 1376 (Ala. 1997), as Barko Hydraulics, LLC, urges, then it appears to me that we would have to ignore the logical inference possible in a case in which a jury is presented with substantial evidence showing no

1121479

lack of proper maintenance or use of the product that could have caused its failure and place too much weight on the discussion by <u>Miller</u> as to cases that might involve warranties against "defects in materials and workmanship," which <u>Miller</u> did not.

1121479

SHAW, Justice (concurring in the result).

I concur in the result reached by the main opinion. I write specially to explain why the trial court did not err in submitting to the jury the issue of incidental and consequential damages.

Incidental and consequential damages can be recovered for a seller's breach. Ala. Code 1975, §§ 7-2-714(3) and -715. Under Ala. Code 1975, § 7-2-719(1), parties may agree to limit remedies for breaches, including damages. However, § 7-2-719(2) states that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." Under the authority of Massey-Ferguson, Inc. v. Laird, 432 So. 2d 1259 (Ala. 1983), when a limited remedy fails of its essential purpose, the damages available in § 7-2-714, including incidental and consequential damages, can be recovered, despite the limitations in the contract.

In the instant case, the warranty issued by Barko Hydraulics, LLC ("Barko"), limited recovery to the replacement of defective parts and barred incidental and consequential damages. However, the main opinion holds that there was

22

1121479

sufficient evidence from which the jury could conclude that Barko's warranty failed of its essential purpose. Specifically, there were numerous complaints by Michael Shepherd as to the hydraulic system as early as four months after the 495ML loader was purchased. Those hydraulic-system issues apparently were not resolved. As the main opinion concludes: "Barko failed to correct the problems with the 495ML loader after repeated complaints and servicings. Given the numerous attempts at repair over the extended period, the jury could properly have concluded that the 495ML loader had not been repaired and that the warranty had failed of its essential purpose." ___ So. 3d at ___. Thus, the limitations on remedies and damages were not applicable in this case.

1121479

BRYAN, Justice (concurring in part and dissenting in part).

I concur in all aspects of the main opinion except insofar as it reverses the judgment in its entirety and remands for a new trial. I would affirm the judgment as to liability, reverse the judgment as to damages, and remand for a new trial on the issue of damages only. See, e.g., LaFarge Bldg. Materials, Inc. v. Stribling, 880 So. 2d 415 (Ala. 2003).

Parker, J., concurs.

1121479

STUART, Justice (concurring in the result in part and concurring in part and dissenting in part as to the rationale).

I agree with the conclusion of the main opinion that the trial court erred by instructing the jury on mental-anguish damages and subsequently entering judgment on the general verdict returned by the jury, which presumably included such damages. However, I believe that it is ultimately unnecessary to address the damages issue because, in my view, the trial court erred by denying the motion filed by Barko Hydraulics, LLC ("Barko"), seeking a judgment as a matter of law on Michael Shepherd's breach-of-warranty claim. That motion was supported by the facts in the record and the law and should have been granted at the close of evidence before the case was submitted to the jury. Accordingly, although I too would reverse the judgment entered by the trial court in toto, I would remand the cause, not for a new trial, but for the trial court to enter a judgment as a matter of law in favor of Barko.

The main opinion correctly cites Ex parte Miller, 693 So. 2d 1372, 1376 (Ala. 1997), for the proposition that express warranties are to be treated like any other type of contract

25

and interpreted according to general contract principles. ___ So. 3d at ___. Foremost among those principles is the idea that an agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms. Black Diamond Dev., Inc. v. Thompson, 979 So. 2d 47, 52 (Ala. 2007). In this case, the express warranty Barko is alleged to have breached was clear and unambiguous -- Barko warrantied that the 495ML loader purchased by Shepherd would be "free from defects in material and workmanship under normal use, maintenance and service." Importantly, this is the only warranty at issue in this case; we are not concerned with implied warranties -- only this express written warranty. Shepherd asserts that Barko has breached this warranty; however, he has not identified for this Court any evidence or testimony in the record indicating that the 495ML loader suffered from "defects in material and workmanship." Rather, he essentially argues that the mere fact that the hydraulic pumps on the 495ML loader failed is itself sufficient evidence that the 495ML loader was defective. This argument is encapsulated by the following excerpt from Shepherd's brief:

> "For at least 40 years, evidence that a product failed to function as warranted has been sufficient

26

to present a breach-of-warranty claim to a jury. Barko asks this Court to ignore that line of cases and hold -- for the first time -- that a plaintiff must present expert testimony detailing the exact defect which caused the product to fail. Barko's argument should be rejected.

"....

"Mr. Shepherd's burden is to prove that the loader failed -- not why. If a loader is manufactured using proper materials and in a workmanlike fashion, it will not fail in the manner this Barko loader failed. The evidence was in dispute whether inadequate maintenance caused the loader to fail. The trial court correctly submitted this issue to the jury.

"Barko argues that Mr. Shepherd was required to present evidence of the specific defect that caused the loader not to operate as warranted. No Alabama case law concerning a claim for breach of warranty supports Barko's argument."

Shepherd's brief, pp. 14-16 (footnotes omitted). Shepherd's argument might be persuasive if we were considering whether there had been a breach of a broad implied warranty such as an implied warranty of merchantability; however, in the context of the express warranty in this case, his argument is, quite simply, incorrect. As shown below, our caselaw makes it clear that one asserting a breach-of-express-warranty claim based on a warranty warranting a product to be free from defects in

27

material or workmanship <u>must</u> present evidence of a specific defect that constitutes a breach of the warranty.

The express warranty offered by Barko -- and accepted by Shepherd -- provided that Barko would repair or replace nonstructural components of the 495ML loader, such as the hydraulic pumps, if those parts "prove[d] <u>to be defective in material or workmanship</u> under normal use, maintenance and service within one (1) year or 2,000 hours, whichever occurs first from first day in service." (Emphasis added.) Notably, Barko did <u>not</u> agree to repair or replace nonstructural component parts of the 495ML loader merely upon proof of the failure of a part. This Court explained the significance of that difference in <u>Ex parte Miller</u>, another case involving a warranty dispute and a Barko-manufactured piece of logging equipment.

In <u>Miller</u>, the trial court entered a judgment as a matter of law in favor of Pettibone Corporation, the parent company of Barko, on various claims asserted by Thomas Miller, the buyer of a Barko 775 feller buncher, after that feller buncher experienced numerous hydrostatic failures. 693 So. 2d at 1373-74. Many of the Barko 775 feller buncher's components,

28

1121479

including the hydrostat, were manufactured by Sauer-Sundstrand, Inc. ("Sundstrand"), and Barko and Sundstrand shared responsibility for the hydrostatic motor and pump under a component warranty that had been issued Miller:

> "'Sundstrand 36 series pumps and VII-160 motors shall be warranted to the original owner for a period of 24 months from in-service date of the machine. During the first 6 months or 1,000 hours, Barko/Sundstrand will determine if units are warrantable.... After the first 6 months or 1,000 hours, component warranty will be determined by Sundstrand.... It shall be the option of Barko and/or Sundstrand to replace any failed units with genuine Sundstrand rebuilt units. Such units may be replaced more than once during the warranty."

693 So. 2d at 1375 n. 5. After the Court of Civil Appeals affirmed the trial court's judgment, Miller petitioned this Court for certiorari review, and, after granting his petition, we ultimately reversed the judgment that that court had entered on Miller's breach-of-express-warranty claim, explaining:

> "Pettibone argued, and the Court of Civil Appeals agreed, that Miller had failed to present substantial evidence of any 'warrantable defect' in the hydrostat. Pettibone makes the same argument here. The component warranty says that the hydrostatic motor and pump 'shall be warranted to the original owner' (emphasis added). It further states that 'it shall be the option of Barko and/or Sundstrand to replace any failed units with genuine Sundstrand rebuilt units,' and that '[a]ny charges

29

for repairs to <u>failed</u> pumps and/or motors which are not warrantable as determined by Sundstrand will be borne by the customer' (emphasis added).

"....

"The component warranty here <u>does</u> <u>not</u> specifically state that it warrants against 'defects' in the product: rather, it warrants the hydrostatic pumps and motors against 'failure.' The Court of Civil Appeals based its affirmance on the express warranty partly because it found that Miller did not provide substantial evidence of a 'warrantable defect.' In other words, the Court of Civil Appeals treated 'warrantable defect' as if it was something that had to be found in every express warranty claim, without reference to the language of the warranty itself.

"On the contrary, '[c]are must be taken to avoid elevating a defect in the goods to the status of an essential element that must be shown in order to recover for a breach of an express warranty.' Ronald A. Anderson, <u>Anderson on the Uniform Commercial Code</u>, § 2-313:217 (3d ed. 1995). If a company such as Pettibone wishes to warrant only defects in material and workmanship, then it may do so; with such a warranty, the plaintiff would have to show that the product was defective in order to show that the goods did not conform to the warranty. Conversely, if a company wishes to warrant against all problems with its product, regardless of origin, then it may do that as well. See Anderson, <u>supra</u>, at § 2-313:205 ('A seller may make a warranty as broad as the seller requires and may go beyond the scope of those warranties that the law would imply').

"In light of the broad language used in this particular component warranty, we can see no other interpretation than that it warrants against 'failures' of the hydrostat. Miller met his prima

> facie burden of showing that the hydrostat failed on April 18, 1991, and other previous times, by presenting testimony of the operators of the feller buncher and of those who worked on the hydrostat after it had broken down. We agree that, if this warranty provided coverage for 'defects in material and workmanship,' then Pettibone would have had at least a plausible argument that Miller had not met his evidentiary burden; however, Miller did offer substantial evidence that the hydrostat failed on April 18. Accordingly, we hold that Miller met his evidentiary burden of proof concerning the warrantability of the failure of the hydrostat."

693 So. 2d at 1376-77 (footnote omitted). Thus, in Miller we held that it was error for the trial court to require a party asserting a warranty claim to prove a specific defect in a warrantied product when the warranty itself broadly warranted against "failures" of the product. In the instant case, we are presented with the converse situation -- the trial court did not require a party asserting a warranty claim to produce evidence of a specific defect in a warrantied product even though the applicable warranty warranted only against defects in material or workmanship. For the reasons explained in Miller, this too was error. See Miller, 693 So. 2d at 1376 ("If a company ... wishes to warrant only defects in material and workmanship, then it may do so; with such a warranty, the plaintiff would have to show that the product was defective in

order to show that the goods did not conform to the warranty.").

The main opinion quotes the admonition of Ex parte Miller, 693 So. 2d at 1376, that "'"[c]are must be taken to avoid elevating a defect in the goods to the status of an essential element that must be shown in order to recover for a breach of an express warranty,"'" ___ So. 3d at ___ n. 2 (quoting in turn Ronald A. Anderson, Anderson on the Uniform Commercial Code § 2-313:217 (3d ed. 1995)), but fails to recognize that that admonition was made in the context of a warranty broadly warranting a product from any failure -- not just a failure caused by a defect in material or workmanship. Moreover, the main opinion inexplicably fails to give any effect to the subsequent sentence in Ex parte Miller providing that "[i]f a company ... wishes to warrant only defects in material and workmanship, then it may do so," and, in fact, the main opinion effectively holds the exact opposite -- a company cannot warrant only defects in material and workmanship and, if a company clearly and unambiguously does so, this Court is providing notice in this opinion that it will nevertheless rewrite the warranty to generally protect

32

against any failure. This of course is contrary to our long-standing precedent that we will enforce contracts as they are written and will not rewrite them. <u>Vankineni v. Santa Rosa Beach Dev. Corp. II</u>, 57 So. 3d 760, 762 (Ala. 2010).

Moreover, with regard to the global statement in the main opinion that "[w]e conclude that the identification of an existing defect is not essential to recovery upon an express warranty," \_\_\_ So. 3d at \_\_\_, I would note that the terms of an express warranty should dictate what evidence is required to prove a breach of that warranty, not an all embracing rule pronounced by this Court. See <u>Cipollone v. Liggett Grp., Inc.</u>, 505 U.S. 504, 525 (1992) ("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty."). The Court of Special Appeals of Maryland explained this principle as follows in a breach-of-express-warranty case involving a tire:

> "It is axiomatic in Maryland that an express warranty is breached when a product fails to exhibit the properties, characteristics, or qualities specifically attributed to it by its warrantor, and therefore fails to conform to the warrantor's representations. The breach of an express warranty of materials and workmanship is established by proof of defects in the material or workmanship. The breach of an express warranty that a roof will not leak for 15 years is established by evidence that

33

1121479

during that period of time the roof leaked. The breach of an express warranty that pipes would seal upon spill going through is established by evidence that when the pipe was assembled and installed, the joints did not seal when spill was pumped through under pressure, and there was leakage. The breach of an express warranty that a product will last for four years is established by evidence that the product did not last for that period of time. Thus, no 'defect' other than a failure to conform to the warrantor's representations need be shown in order to establish a breach of an express warranty."

McCarty v. E.J. Korvette, Inc., 28 Md. App. 421, 437, 347 A.2d 253, 264 (1975) (footnotes omitted). See also Mac Pon Co. v. Vinsant Painting & Decorating Co., 423 So. 2d 216, 219 (Ala. 1982) ("The reason liability is assessed for breach of warranty, whether the warranty be express or implied, is that goods have failed to conform to requirements imposed by the warranty."). The United States District Court for the Southern District of Alabama also properly applied this principle in Tull Bros., Inc. v. Peerless Products, Inc., 953 F. Supp. 2d 1245, 1257 (S.D. Ala. 2013), when it held that "[a] written warranty against defects in materials or workmanship does not encompass a warranty against defects in design."

Finally, although I have already noted that Shepherd adduced no evidence of defects in material and/or workmanship

34

that might serve as the basis for a breach-of-warranty claim based on the express warranty in this case -- and, accordingly, the jury's verdict is necessarily based on nothing more than mere speculation that there might have been such a defect -- I write further to emphasize the absence of any expert testimony indicating that there was a defect in material or workmanship. In both its preverdict motion for a judgment as a matter of law and its renewed motion filed after judgment was entered on the jury's verdict, Barko argued that Shepherd had not established what caused the failure of the hydraulic pumps on the 495ML loader, much less that that failure was caused by a defect in material or workmanship. Barko also argued that Shepherd's failure to introduce any expert testimony establishing a defect was fatal to his case. In both motions it quoted the following passage from this Court's opinion in Brooks v. Colonial Chevrolet-Buick, Inc., 579 So. 2d 1328, 1333 (Ala. 1991):

> "In this case, the [plaintiffs], by their own admission, had no knowledge whatever regarding the brake system of an automobile. Furthermore, they offered no expert testimony as to the existence of a design defect -- they did not even attempt to offer any expert opinion related to the repair records concerning the complaints about the brakes that they had made to Colonial, nor did they attempt

to offer any expert testimony related to their allegations of a design defect in the brake system. The only evidence the [plaintiffs] presented concerning a defect in design was their own testimony as to the alleged defectiveness of the brakes and as to the alleged injuries they suffered as a result. Such evidence as to the cause of a product failure amounts to mere speculation and conclusory statements ...."

Like Brooks, the only supposed "evidence" of a defect in material or workmanship in this case was the fact that a piece of equipment failed.[7] Although it bears repeating that the mere fact that a piece of equipment fails is not substantial evidence showing that there was a defect in materials or workmanship -- there was, after all, testimony indicating that the failure of the hydraulic pumps could be attributable to just normal wear and tear after approximately 4,300 hours of operation -- it is especially inappropriate to make that conclusion with regard to complicated equipment like the hydraulic system on heavy logging equipment in the absence of any expert testimony. As this Court further stated in Brooks:

---

[7]Also like the plaintiffs in Brooks, who admitted they had no knowledge of an automotive brake system, 579 So. 2d at 1333, Shepherd acknowledged in his deposition that his mechanical expertise with regard to heavy logging equipment was essentially limited to changing oil and parts and that he was not equipped to diagnose problems in such equipment.

"The [plaintiffs] contend that the instant case does not present a situation so complex or complicated that an expert is necessary to explain the cause and effect of that situation to the jurors. However, an automobile brake system is composed of, among other parts, cali[p]ers, rotors, discs, rear wheel cylinders, brake shoes, and master cylinders; it is a system composed of parts that would not be familiar to the lay juror, and the lay juror could not reasonably be expected to understand that system and determine if it was defective, without the assistance of expert testimony. In essence, it is a system that appears to be precisely the type of complex and technical commodity that would require expert testimony to prove an alleged defect."

579 So. 2d at 1333. It seems uncontroversial to presume that a typical juror would likely be more familiar with the brake system on an automobile than the hydraulic system on heavy logging equipment; accordingly, Brooks would indicate that expert testimony was necessary in this case as well and that Shepherd's failure to present such evidence required the granting of Barko's motion for a judgment as a matter of law.[8]

---

[8]In Ex parte General Motors Corp., 769 So. 2d 903, 912-13 (Ala. 1999), this Court distinguished Brooks and held that expert testimony was not required in a breach-of-warranty case involving a claim that an automobile was defective. However, the warranty at issue in that case was the implied warranty of merchantability, not an express warranty as in this case. A breach of the implied warranty of merchantability requires proof that a product was not "'fit for the ordinary purposes for which such goods are used,'" id. at 913 (quoting § 7-2-314(2)(c), Ala. Code 1975), while a breach of an express warranty requires proof that the warranted product failed to

1121479

Accordingly, because neither substantial evidence nor any expert testimony was adduced at trial indicating that the 495ML loader manufactured by Barko and purchased by Shepherd suffered from a defect in material and/or workmanship, the trial court erred by not granting Barko's motion for a judgment as a matter of law. This Court should accordingly direct the trial court to enter a judgment as a matter of law in favor of Barko; consideration of the other issues raised by the parties is unnecessary.

---

conform with the representations made in the express warranty -- in this case that the 495ML loader would be free from "defects in material and workmanship." Thus, expert testimony might not have been necessary to establish a hypothetical breach-of-implied-warranty-of-merchantability claim in this case, because Shepherd arguably submitted substantial evidence indicating that the 495ML loader was not fit for its intended purpose. However, the only claim submitted to the jury in this case was a breach-of-express-warranty claim, and Shepherd submitted no evidence, much less the expert testimony required by Brooks, establishing a breach of the express warranty made by Barko that the 495ML loader would be free from "defects in material and workmanship."