[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11714
_____

D.C. Docket No. 3:13-cv-01402-AKK


ROBERT C. LISK,
individually and on behalf of a
class of similarly situated persons,

Plaintiff-Appellant,

versus

LUMBER ONE WOOD PRESERVING, LLC,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 10, 2015)

Before MARCUS and JILL PRYOR, Circuit Judges, and HINKLE,[*] District Judge.

HINKLE, District Judge:

In this proposed class action, the named plaintiff asserts that wood he bought for a fence at his home was not properly pressure-treated and that it prematurely rotted. He asserts claims against the defendant wood manufacturer under Alabama law, first for violating the Alabama Deceptive Trade Practices Act, and second for breach of express warranty. The district court dismissed the claims.

This appeal presents two issues. The first arises from a conflict between Federal Rule of Civil Procedure 23, which authorizes class actions including for consumer claims of this kind, and the ADTPA, which creates a private right of action but forbids private class actions. We hold that Rule 23 controls.

The second issue arises from the lack of privity between the plaintiff and the defendant. Alabama law allows a consumer to recover for breach of an express warranty, even in the absence of privity, in some circumstances. We hold that the complaint adequately alleges the required circumstances and thus states a claim on which relief can be granted.

---

[*] Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

I

The complaint alleges these facts. The named plaintiff Robert Lisk entered a contract with Clean Cut Fence Company for installation of a fence at his home. The contract called for Clean Cut to use "treated" wood. The contract said, "All fencing materials shall be warranted only through their respective manufacturers."

Clean Cut built the fence using wood it purchased from Capitol Wholesale Fence Company. Capitol was a distributor for, and obtained the wood from, the defendant Lumber One Wood Preserving, LLC ("Lumber One"). Lumber One manufactured the wood.

Lumber One warranted—and said on its website, advertising, and product labeling—that its wood was treated with MCA technology licensed by Osmose, Inc. MCA-treated wood remains free from rot, fungal decay, and termite attacks for at least 15 years. But Lumber One defectively manufactured and treated its wood—if it treated the wood at all.

Within three years after installation, Mr. Lisk's fence posts were rotten. Clean Cut informed Mr. Lisk that other customers had experienced similar problems with Lumber One's wood.

II

Mr. Lisk filed a complaint seeking to represent a nationwide class of all purchasers of Lumber One's defectively "treated" wood. The complaint names

3

Lumber One as the only defendant.  Mr. Lisk and Lumber One are citizens of different states—Tennessee and Alabama—but the amount of Mr. Lisk's individual claim does not exceed $75,000.  Mr. Lisk invoked federal jurisdiction under the Class Action Fairness Act.  The parties assume, and for present purpose we accept, that Alabama law governs the substantive claims.

Lumber One moved to dismiss, asserting that the ADTPA does not authorize a private class action, that the complaint does not adequately plead an express warranty that runs to a remote purchaser, that dismissal of the defective claims would leave pending only an ADTPA individual claim, and that this would leave no basis for federal jurisdiction.

The district court granted the motion and dismissed the complaint.  Mr. Lisk appeals.

### III

The district court's order is correct only if the complaint fails to state a class-action claim on which relief can be granted under the ADTPA and fails to state an express-warranty claim at all.  To avoid dismissal for failure to state a claim, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The complaint's factual allegations, though not its legal conclusions, must be accepted as true.  Id.; see also Bell Atl.

4

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must include

"allegations plausibly suggesting (not merely consistent with)" the plaintiff's

entitlement to relief.  Twombly, 550 U.S. at 557.  The complaint must set out

facts—not mere labels or conclusions—that "render plaintiffs' entitlement to relief

plausible."  Id. at 569 n.14.

We review de novo a district court's ruling that a complaint fails to state a

claim.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

IV

The ADTPA prohibits a variety of deceptive practices, including

misrepresenting the characteristics or qualities of goods and representing that

goods are of a particular standard or quality when they are not.  Ala. Code § 8-19-

5(5), (7) (1975).  Misrepresenting that wood is MCA pressure-treated, when it is

not, violates the statute.

The ADTPA creates a private right of action in favor of a consumer against

a person who violates the statute.  The consumer may recover the greater of $100

or actual damages or, in the court's discretion, up to three times actual damages,

together with attorney's fees.  Id. § 8-19-10(a).  But the ADTPA provides that only

the Alabama Attorney General or a district attorney may bring a class action; a

private individual may not:

> A consumer or other person bringing an action under this chapter
> may not bring an action on behalf of a class; provided, however,

5

> that the office of the Attorney General or district attorney shall have the authority to bring action in a representative capacity on behalf of any named person or persons.  In any such action brought by the office of the Attorney General or a district attorney the court shall not award minimum damages or treble damages, but recovery shall be limited to actual damages suffered by the person or persons, plus reasonable attorney's fees and costs.

Id. § 8-19-10(f).

If this case were pending in an Alabama state court, the statute would preclude presentation of the ADTPA claims in a private class action.  But the case is in federal court.  Federal Rule of Civil Procedure 23 allows class actions and makes no exception for cases of this kind.  Instead, the rule provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members," if specified conditions are met.  The complaint alleges, and for present purposes we assume, that the conditions are met here.

The issue, then, is whether Rule 23 applies or is instead displaced by the contrary provision of the ADTPA.

The Supreme Court addressed a nearly identical issue in Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393 (2010).  A New York statute required insurers to pay valid claims within 30 days and imposed interest at two percent per month on late payments.  A separate New York statute allowed class actions on conditions tracking those in Federal Rule of Civil Procedure 23 but prohibited class actions for claims seeking statutory penalties.

6

Under New York law, the two-percent monthly interest was a penalty within the meaning of the class-action statute. An individual whose claim was paid late filed a proposed class action against his insurer in federal court seeking to recover the statutory interest. The issue there, as here, was which provision controlled—Rule 23 or the state-law prohibition on class actions for claims of this kind.

The Supreme Court held that Rule 23 governed. The decision compels the same result here.

There is room for debate only because in Shady Grove the Court split 4–1–4; no single rationale garnered five votes. Justice Scalia authored a plurality opinion for four justices. Justice Stevens concurred separately. Four justices dissented.

In our case the parties debate with vigor whether we should follow the analysis of Justice Scalia (under which Rule 23 plainly controls) or that of Justice Stevens (under which the issue is closer). But before turning to that question, it is important to note that Justice Stevens joined parts of Justice Scalia's opinion. Those parts, labeled sections I and II–A, thus were joined by five justices; those parts were the opinion of the Court. And those parts confirmed the analysis long followed in resolving conflicts between the Federal Rules of Civil Procedure and contrary provisions of state law.

The short version of that analysis is this. The federal Rules Enabling Act authorizes the Supreme Court to adopt rules of practice and procedure that apply

not only in cases arising under federal law but also in cases in which state law supplies the rule of decision. The Act provides:

> (a)  The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.
>
> (b)  Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

28 U.S.C. § 2072. Under the plain terms of the statute, a federal rule applies in any federal lawsuit, and thus displaces any conflicting state provision, so long as the federal rule does not "abridge, enlarge or modify any substantive right." See, e.g., Hanna v. Plumer, 380 U.S. 460 (1965). A state statute precluding class actions for specific kinds of claims conflicts with Rule 23 and so is displaced for claims in federal court so long as applying Rule 23 does not "abridge, enlarge or modify any substantive right."

To this point in the analysis, the five justices in the Shady Grove majority agreed. Justice Stevens parted company with the other four only on the proper approach for deciding whether a federal rule abridges, enlarges, or modifies a substantive right. But of critical importance here, all five justices agreed that applying Rule 23 to allow a class action for a statutory penalty created by New York law did not abridge, enlarge, or modify a substantive right; Rule 23

8

controlled.  Regardless of which Shady Grove opinion is binding, the holding is binding.  On this there can be no dispute.

The holding controls our case.  There is no relevant, meaningful distinction between a statutorily created penalty of the kind at issue in Shady Grove, on the one hand, and a statutorily created claim for deceptive practices of the kind at issue here, on the other hand.  Each is a creature of state law.  For each, state law allows an injured person to seek redress in an individual action but precludes the person from maintaining a class action.  The state's purpose in precluding class actions, while perhaps not completely clear, is essentially the same—to allow individual redress but to prelude class recoveries that, in the legislature's view, may go too far.

Indeed, on one view ours is a stronger case than Shady Grove for applying Rule 23.  The New York statute at issue there precluded statutory-penalty class actions altogether.  The Alabama statute at issue here, in contrast, allows class actions so long as they are brought by the Attorney General or a district attorney.  If Rule 23 did not abridge, enlarge, or modify a substantive right under the New York statute, even though the statute precluded class actions altogether, it is difficult to conclude that Rule 23 abridges, enlarges, or modifies a substantive right in Alabama, when all the statute does is prescribe who can bring a class claim based on the very same substantive conduct.

To be sure, the New York prohibition on statutory-penalty class actions was included in a procedural statute addressing class actions generally; the prohibition was not part of the statute that created the statutory penalty. The Alabama class-action prohibition, in contrast, is part of the ADTPA itself. Some district courts have said this is controlling. See Lisk v. Lumber One Wood Preserving, LLC, 993 F. Supp. 2d 1376, 1383-84 (N.D. Ala. 2014) (collecting cases). But how a state chooses to organize its statutes affects the analysis not at all. Surely the New York legislature could not change the Shady Grove holding simply by reenacting the same provision as part of the statutory-interest statute. Surely an identical ban on statutory-interest class actions adopted by another state would not override Rule 23 just because it was placed in a different part of the state's code. The goal of national uniformity that underlies the federal rules ought not be sacrificed on so insubstantial a ground. And more importantly, the question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance— not on the placement of a statute within a state code.

It is true, as well, that the New York class-action statute at issue in Shady Grove, at least on its face, applied to claims arising not only under New York substantive law, but under the laws of other jurisdictions. This weakened the argument that the New York class-action statute created substantive rights. Still, the claim at issue in Shady Grove arose under New York substantive law. The

10

Supreme Court held that Rule 23 controlled over the New York class-action statute even as applied to a claim arising under New York substantive law.  And again, the New York legislature or courts surely could not have changed the result simply by amending or construing the New York class-action statute so that it applied only to claims arising under New York substantive law.  The <u>Shady Grove</u> holding cannot fairly be limited to state class-action provisions that, on their face, seem to apply to claims arising under the laws of other jurisdictions.

The bottom line is this.  The Alabama statute restricting class actions, like the New York statute at issue in <u>Shady Grove</u>, does not apply in federal court.  Rule 23 controls.

What we have said to this point squares with the views set out not only in Justice Scalia's majority opinion in <u>Shady Grove</u> (the portion of his opinion joined by five justices and thus constituting the opinion of the Court) but also with the views set out in both Justice Scalia's plurality opinion and in Justice Stevens's concurrence.  This makes it unnecessary to decide whether the further binding opinion is that of the plurality or Justice Stevens.

Leaving this issue unresolved comports with the general preference for avoiding unnecessary rulings and is especially appropriate for two additional reasons.  First, the Supreme Court has said, "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices,

the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (quotation omitted).  As the Supreme Court has itself acknowledged, applying this test is difficult.  See Nichols v. United States, 511 U.S. 738, 745-46 (1994).  For some issues, asking which of two opinions is narrower is akin to asking, "Which is taller, left or right?"  The Supreme Court can avoid the dilemma by simply reconsidering the issue that fragmented the Court originally.  See id. at 746-47 (overruling an earlier, fragmented decision).  But that of course is not an option for a circuit court.  An issue that presents this level of uncertainty is best reserved for a case in which it matters.

Second, we apparently have taken as many as three different approaches—or we at least have articulated our approach three different ways—when confronting other fragmented Supreme Court decisions.  See, e.g., Wellons v. Comm'r, Ga. Dep't of Corrs., 754 F.3d 1268, 1269 n.2 (11th Cir. 2014) ("Justice O'Connor was the fifth and decisive vote for the plurality opinion.  Thus, her concurrence set binding precedent."); Swisher Int'l, Inc. v. Schaefer, 550 F.3d 1046, 1053-58 (11th Cir. 2008) (assuming that neither the four-person plurality nor a single justice's concurrence was narrower, independently analyzing the underlying issue, and siding with the single justice, partly on the ground that the dissenters agreed); United States v. Robison, 505 F.3d 1208, 1221 (11th Cir. 2007) (following an

12

opinion deemed narrowest and explicitly disregarding the view of the dissenters because Marks says to follow the opinion of the justices "who concurred in the judgments on the narrowest grounds" (emphasis by the court in Robison) (quoting Marks, 430 U.S. at 193)).  Again, these decisions can be sorted out or reconciled when it makes a difference to the outcome.

In sum, Rule 23 applies in this case.  The ADTPA prohibition on class actions does not.

This result makes sense.  On any view, the only issue is whether, as applied here, Rule 23 abridges, enlarges, or modifies a "substantive right."  28 U.S.C. § 2072(b).  A "substantive right" is one that inheres in "the rules of decision by which [the] court will adjudicate [the petitioner's] rights."  Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1361 (11th Cir. 2014) (quoting Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  Lumber One's substantive obligation was to comply with the ADTPA—to make only accurate representations about its product.  The substantive right of Mr. Lisk and other buyers was to obtain wood that complied with Lumber One's representations.  These are the "rules of decision" that will govern the ADTPA claim.  Under Alabama law, Mr. Lisk and other buyers were and are entitled to seek redress.  Rule 23 alters these substantive rights and obligations not a whit; with or without Rule 23, the parties have the same substantive rights and responsibilities.  The disputed issue is not whether Mr. Lisk

13

and other buyers are entitled to redress for any misrepresentation; they are.  The disputed issue is only whether they may seek redress in one action or must instead bring separate actions—whether any representative action may be brought by a consumer or must be brought by the Attorney General or a district attorney. Because Rule 23 does not "abridge, enlarge or modify any substantive right," Rule 23 is valid and applies in this action.

V

Under Alabama law, "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty . . . ."  Ala. Code § 7-2-313(1)(a) (1975).  The complaint alleges that "Lumber One's website, advertising, and product labeling represented that its treated lumber was pressure treated using MCA technology licensed by Osmose, Inc."  As the district court correctly ruled, the complaint adequately alleges an express warranty to Lumber One's buyer, Capitol Wholesale. Lumber One does not dispute this conclusion on this appeal.

The contested issue is whether Mr. Lisk has adequately stated a claim for relief as a third-party beneficiary of the express warranty.  Under Alabama law, a manufacturer's express warranty, like any contractual obligation, may run in favor of a third-party beneficiary.  See Harris Moran Seed Co. v. Phillips, 949 So. 2d 916, 922-25 (Ala. Civ. App. 2006).  The general standard governing third-party-

14

beneficiary claims is this:  "To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached."  Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc., 512 So. 2d 99, 101-02 (Ala. 1987).

Mr. Lisk has explicitly alleged each of these three elements of a third-party-beneficiary claim.  The complaint alleges that Lumber One breached its warranty by selling wood that was not pressure-treated at all or was treated improperly.  And the complaint alleges that when Lumber One warranted that its wood was pressure-treated, Lumber One intended to benefit remote purchasers like Mr. Lisk and the proposed class members: "Lumber One intended to protect future customers of Capitol Wholesale Fence Company, other wholesalers, and subsequent purchasers, including end-users like Plaintiff and Class Members, when it warranted the quality of its products . . . ."

Under Federal Rule of Civil Procedure 9(b), "intent . . . and other conditions of a person's mind may be alleged generally."  Mr. Lisk's allegation of intent easily meets this standard.  To be sure, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, and must include "allegations

15

plausibly suggesting (not merely consistent with)" the plaintiff's entitlement to relief.  Twombly, 550 U.S. at 557.  But there is nothing implausible about the allegation that a lumber manufacturer intends to warrant its product to end users.  Quite the contrary.  It is entirely plausible that a manufacturer would so warrant its product, lest end users choose to buy wood manufactured by someone else— someone willing to stand behind its product.

This conclusion draws support from the leading Alabama decision on this issue.  In Harris Moran Seed Co. v. Phillips, 949 So. 2d 916 (Ala. Civ. App. 2006), a tomato-seed manufacturer warranted that its seeds conformed to the label, but otherwise the manufacturer sold the seeds "as is."  Remote purchasers—farmers who bought from a seller who bought from a distributor who bought from the seed manufacturer—asserted third-party-beneficiary claims under the true-to-label warranty.  The court upheld a jury verdict for the farmers, ruling that the farmers were indeed third-party beneficiaries.

Our case is like Harris Moran in most respects.  In each case the product was distributed through the same number of layers.  Wood, like seeds, may appear sound but be defective.  A defect in wood, like a defect in seeds, may become evident only after substantial work is done and substantial expense is incurred, whether in installing a fence or growing a crop.  Manufacturers of wood, like those

16

of seeds, might well choose to extend a warranty to end users to increase the market for the product.

Harris Moran said that a "court [may] look at the surrounding circumstances" in determining whether an end user is a third-party beneficiary. Id. at 920-21. One of the circumstances a court may consider is the foreseeability of harm to end users. Id. at 923. Lumber One knew its wood was bound for end users and that they would suffer substantial harm if the wood did not conform to the warranty. Here, as in Harris Moran, the circumstances provide substantial support for the third-party-beneficiary claim.

To be sure, there may also be differences in our case and Harris Moran. There the court found support in the manufacturer's sales agreement, which did not explicitly designate end users as third-party beneficiaries but did include references to end users and required them to be notified of warranty limitations. Here the complaint does not make similar allegations about the agreement between Lumber One and its distributor, perhaps because the agreement is not yet available to Mr. Lisk. If the agreement disclaims any warranty to end users, that will support Lumber One and may even entitle Lumber One to prevail. See Bay Lines, Inc. v. Stoughton Trailers, Inc., 838 So. 2d 1013, 1016, 1018-19 (Ala. 2002) (rejecting a third-party-beneficiary claim because the manufacturer's warranty was explicitly

17

"limited to the original equipment purchaser"). It will be time enough to address the effect of the agreement when its terms are known.

The complaint adequately states an express-warranty claim on which relief can be granted.

VI

For these reasons, the judgment is reversed, and the case is remanded to the district court.