[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11235

Non-Argument Calendar

_____

RITA HARMAN,
Individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

*versus*

TAURUS INTERNATIONAL MANUFACTURING INC.,
TAURUS HOLDINGS INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

D.C. Docket No. 3:21-cv-00697-ECM-SMD

_____

Before ROSENBAUM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Rita Harman filed a putative class-action lawsuit alleging that a firearm—the Taurus PT 738—manufactured by the defendants, Taurus International Manufacturing, Inc., and Taurus Holdings, Inc. (collectively, "Taurus"), was defective and unreasonably dangerous. Harman brought claims for breach of express warranties and violations of state consumer protection laws, including the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), among other claims. The district court dismissed the action, concluding in part that Taurus did not breach an express warranty because Harman alleged only a design defect outside the scope of a materials-and-workmanship warranty, and because Harman neither sought nor was denied service under a repair warranty. It also found that her FDUTPA claim was time barred. Harman appeals.

After careful review, we agree with the district court that the materials-and-workmanship warranty does not cover design defects, and that Taurus did not breach the repair warranty. Nonetheless, we hold that Harman plausibly alleged coverage under the materials-and-workmanship warranty for a defect in the materials or workmanship (or both), so we vacate and remand for further proceedings on that claim. We also vacate the dismissal of the

FDUTPA claim as time barred and remand for the court to reevaluate that claim, as described below.

## I.

Because this appeal arises from the grant of a motion to dismiss, we accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931 (11th Cir. 2022).

## A.

Harman received a Taurus PT 738 pistol as a gift from her husband Chris in December 2011. Many years later, in November 2020, Chris was firing the PT 738 at the local gun range when the pistol's slide broke in half, sending fragments of the slide into his eye and face.[1]

In February 2021, Harman filed a putative class action lawsuit against Taurus, the manufacturer, alleging that the PT 738, as a class of pistols, contained a latent defect that made it unreasonably dangerous.[2] She filed the operative second amended complaint in March 2022. For ease of reference, we refer to this pleading as the "complaint."

---

[1] Chris Harman suffered facial bone fractures and a detached retina requiring a cornea transplant, and he may not regain sight in that eye. He filed a separate personal-injury lawsuit, which remains pending and is not at issue here.

[2] The pleadings also alleged that another gun model, the Taurus PT 732, was defective and unreasonably dangerous for the same reasons as the PT 738.

According to the complaint, the defect "causes the slide of the [Taurus PT 738] to break in half at the ejection port when the [p]istol is fired," turning pieces of the slide into "dangerous projectiles." The complaint also asserted that the defect resulted from the common "design and manufacturing of the slides." In particular, the complaint continued, the PT 738 was designed to "combine two separate functions into one component," in that the "disassembly latch operates as both a slide lock/take down level that allows the slide to be removed and a locking block that disconnects the barrel from the slide during recoil." According to the complaint, this design "can provide false-positive indicators of proper re-assembly" and result in catastrophic failure during normal use.

What's more, the complaint alleges, Taurus was aware of the defective slides before the PT 738 entered the marketplace in 2009. Internal testing had revealed that the PT 738 exhibited defective slides. And then, in 2014, another consumer was severely injured when the slide on his PT 738 broke in half during use, causing the gun "to explode in his hand." Taurus was informed of this incident and received photos of the broken slide, the complaint asserts.

Despite knowledge that the Taurus PT 738's slide was defective, the complaint alleges, Taurus concealed the defect from the public. According to the complaint, Taurus denied the existence of the defect and "actively instructed [its] design and marketing teams to avoid mentioning the [d]efect" and "to hide the defect." It also refused to issue a safety alert to PT 738 owners or the

public or to implement a recall.  Instead, the complaint continues, Taurus worked behind the scenes to fix the problem for future product lines, making "small changes in design through the product's life cycle," but the defect "was not fixed."

**B.**

The complaint contains five counts for relief against Taurus: (1) violation of FDUTPA; (2) violation of the Alabama Deceptive Trade Practices Act ("ADTPA"); (3) breach of express warranty; (4) breach of implied warranty of merchantability; and (5) violation of the Magnuson-Moss Warranty Act.  For the express-warranty count, the complaint identified several alleged warranties Taurus made, two of which are relevant here: (a) that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship"; and (b) that Taurus "will repair, free of charge, any weapon manufactured or distributed by Taurus International" for the lifetime of the firearm.

The district court granted Taurus's motion to dismiss the action for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. First, the court found that Harman failed to allege a breach of an express warranty.  Taurus did not breach the repair warranty, according to the court, because "[a] breach of a repair warranty cannot occur unless a manufacturer is given an opportunity to fulfill its promise under the warranty and subsequently fails to do so," and Harman did not allege that she sought or was denied repairs under the warranty.  The court explained that Alabama state law includes no freestanding duty to recall.

Nor did Taurus breach the materials-and-workmanship warranty, in the district court's view.  The court found that the warranty was limited "to flaws in workmanship and materials—i.e., manufacturing defects," and did not extend to design defects.  And it reasoned that, although Harman alleged flaws in both the design and manufacturing of the slides, "the only facts she provide[d] relate[] to the PT 738 pistol's faulty *design*, not its workmanship or materials."  The court noted that the complaint alleged the defect to be common to all PT 738 pistols, rather than something more isolated, and attributed the defect to a specific design choice to "combine two separate functions into one component."  Thus, the court determined that Harman's allegations of a manufacturing defect were entirely conclusory and insufficient to state a plausible claim for breach of the materials-and-workmanship warranty.

As for the other warranty claims, Harman conceded the implied-warranty claim in response to Taurus's motion to dismiss, so the district court dismissed it.  And the court dismissed the Magnuson-Moss claim as derivative of the other warranty claims and not viable for the same reasons.

Next, the district court concluded that the applicable four-year statute of limitations barred the FDUTPA claim.  *See* Fla. Stat. § 95.11(3)(e).  The court noted that the statute of limitations began to run from the date of purchase in 2011, and it rejected Harman's argument for tolling of the limitations period based on a theory of fraudulent concealment.  In the court's view, Taurus's alleged

nondisclosure of the defect was not the type of active concealment that would toll the limitations period.

Finally, the district court dismissed the ADPTA claim, which Harman based on an alleged violation of the unlimited repair warranty. Echoing its earlier conclusions, the court found that Harman had not alleged that she sought or was denied repairs for any alleged defect, as required to make a claim for breach of a repair warranty. This appeal followed.

## II.

We review *de novo* the district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Adams v. Palm Beach County*, 94 F.4th 1334, 1337 (11th Cir. 2024). To avoid dismissal for failure to state a claim, the complaint must include enough facts to state a plausible claim to relief. *Hunt v. Aimco Props, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). A claim is plausible when the plaintiff's non-conclusory factual allegations allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.*

## III.

We start with the express-warranty claims. In Alabama, express warranties are treated like any other contract and interpreted according to general contract principles. *Barko Hydraulics, LLC v. Shepherd*, 167 So. 3d 304, 310 (Ala. 2014). "[T]he crux of all express

warranty claims is that the goods did not conform to the warranty." *Ex parte Miller*, 693 So. 2d 1372, 1376 (Ala. 1997).

Express warranties can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Ala. St. § 7-2-313(1)(a). Thus, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525–26 (1992). So if a company "wishes to warrant only defects in material and workmanship, then it may do so." *Ex parte Miller*, 693 So. 2d at 1376. But "if a company wishes to warrant against all problems with its product, regardless of origin, then it may do that as well." *Id.* Indeed, "the clear public policy in Alabama is to allow a seller to limit the remedies available to a buyer." *Puckett, Taul & Underwood, Inc. v. Schreiber Corp., Inc.*, 551 So. 2d 979, 983 (Ala. 1989).

## A.

Harman first argues that the district court erred in concluding that the warranty against "defects in material and workmanship" covered only defects in manufacturing, not defects in design.[3] She asserts that an ordinary consumer would not interpret the warranty in this way and that "[i]f Taurus wanted to immunize itself from design defects as well as manufacturing defects it should have

---

[3] Harman brought her express-warranty claims under a third-party beneficiary theory. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1338 (11th Cir. 2015). The requirements for recovery under that theory are not at issue.

said so in plain language that an ordinary consumer could understand."

The parties have not identified any on-point precedent from Alabama courts. Nonetheless, our caselaw recognizes a difference between manufacturing defects and design defects. *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989); *see St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1190 (11th Cir. 2009) ("Although there is a distinct difference between a manufacturing defect and a design defect, manufacturers may be liable for both types of defects."). We have described a manufacturing defect as "an unintended configuration," while a design defect is "an intended configuration that may produce unintended and unwanted results." *Harduvel*, 878 F.2d at 1317.

The overwhelming consensus among courts nationwide is that a warranty against defects in "material or workmanship" covers manufacturing defects, but not design defects.[4] *See, e.g.*, *Secura*

---

[4] A few district courts have reached a contrary conclusion when addressing a motion to dismiss for failure to state a claim. *See Koulajian v. Trek Bicycle Corp.*, No. 90-cv-3156, 1992 WL 28884, *2 (S.D.N.Y. Feb. 11, 1992); *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL no. 1920, 2008 WL 4866604, *15 (D. Neb. Nov. 7, 2008) (relying on *Koulajian*). But *Koulajian* applied Indiana law, and the Eighth Circuit later held that a materials-and-workmanship warranty under Indiana law did not include design defects. *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753–54 (8th Cir. 2013). Nonetheless, *Koulijian*'s result arguably remains consistent with review standards at the pleading stage, "where the distinction between defect in design and defect in materials or workmanship is [more] a matter of semantics." *Alin v. Am. Honda Motor Co., Inc.*, No. 08-cv-4825, 2010 WL 1372308, *6 (D.N.J. Mar. 31, 2010).

*Ins. Co. v. Deere & Co.*, 101 F.4th 983, 987 (8th Cir. 2024); *Coba v. Ford Motor Co.*, 932 F.3d 114, 121–23 (3d Cir. 2019); *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753–54 (8th Cir. 2013); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 524, 527 (7th Cir. 2003).

As the Eighth Circuit recently explained, "flaws in materials and workmanship refer to mistakes made during the construction or assembly of a product, while defects in design refer to inadequacies in the plans used to construct or assemble a product." *Secura*, 101 F.4th at 987; *see also Coba*, 932 F.3d at 121 ("[I]n the context of product development, defects in 'workmanship' and 'materials' are flaws pertaining to the construction or manufacture of a product, while defects in 'design' are shortcomings that arise in the plans for a product's creation."). These cases relied on the plain language of the terms at issue—"materials," "workmanship," and "design"—as well as historical practice in products-liability litigation. *See Secura*, 101 F.4th at 987–88; *Coba*, 932 F.3d at 121–22; *e.g.*, *Lombard Corp. v. Quality Aluminum Prods. Co.*, 261 F.2d 336, 338 (6th Cir. 1958) ("A defect in material is a defect in quality. . . . A defect in workmanship is a defect in the way some part of the machine is constructed. . . . Design, on the contrary, involves the overall plan of construction and operation.").

What's more, these distinctions are consistent with the limited Alabama authority available. Alabama public policy "allow[s] a seller to limit the remedies available to a buyer." *Puckett, Taul & Underwood*, 551 So. 2d at 983. In *Ex parte Miller*, for example, the Supreme Court of Alabama stated that a company may choose to

warrant against only "defects in material and workmanship" in its product.  693 So. 2d at 1376.  Such a warranty does not extend to "all problems with its product, regardless of origin."  *Id.*  Given this public policy, as well as the established distinction between manufacturing defects and design defects, Alabama law does not support reading the materials-and-workmanship warranty to cover problems of a different origin—namely, design.  District courts applying Alabama law have reached similar conclusions.  *See*, *e.g.*, *Tull Bros., Inc. v. Peerless Prods., Inc.*, 953 F. Supp. 2d 1245, 1257 (S.D. Ala. 2013) ("A written warranty against defects in materials or workmanship does not encompass a warranty against defects in design.").

Harman responds that an ordinary consumer would understand a warranty against defects in "material or workmanship" to include defects in design.  But she fails to support that conclusory assertion with any definitions, authority, or analysis.  Nor does she engage with any of the district court's reasoning in rejecting her argument on this point, or with the plain-language analysis of our sister circuits in *Secura* and *Coba*.  *See Secura*, 101 F.4th at 987–88; *Coba*, 932 F.3d at 121–22.

Harman also contends that Taurus should have used plain language to exclude coverage for design defects.  But that gets it backwards.  Her claim is based on breach of an express warranty, which arises from an "affirmation of fact or promise made by the seller to the buyer."  Ala. Code § 7-2-313(1)(a).  Harman neither identifies an affirmative promise by Taurus to cover design defects nor an ambiguity that would permit construing the warranty to

cover more than manufacturing defects. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224–25 (9th Cir. 2015) (construing a materials-and-workmanship warranty to cover both manufacturing and design defects where it "reference[d] defects that are introduced during the 'design' process," and so was ambiguous).

For these reasons, we agree with the district court that, under Alabama law, a warranty that limits its coverage to defects in materials and workmanship does not, without more, apply to defects in design.

**B.**

Next, Harman maintains that, even if the warranty covers only manufacturing defects, the operative complaint alleged a manufacturing defect within the scope of the warranty.

The district court reasoned that Harman's allegations of a manufacturing defect were wholly conclusory and insufficient to state a claim to relief. In doing so, the court correctly observed that the second amended complaint primarily alleged a "latent design [d]efect, . . . such that if the [PT 738 pistols] work as designed they are still defective." *See, e.g.*, *Harduvel*, 878 F.2d at 1317 (describing a design defect as "an intended configuration that may produce unintended and unwanted results"). In particular, the complaint alleged that the design of the PT 738 pistol was defective because it attempted to combine two separate functions into one component, which "can provide false-positive indicators of proper reassembly and may work loose during normal use," resulting in "catastrophic failure."

Still, the complaint repeatedly alleges that the slide failed due to both "design and manufacturing" defects. And "the fact that plaintiff's general theory of the case presented [the defective slide] as a product-wide design flaw would not preclude proof of a manufacturing defect as well." *Harduvel*, 878 F.2d at 1318.

So we must look to Alabama law to determine whether Harman stated a plausible express-warranty claim based on a manufacturing defect. We find the Alabama Supreme Court's decision in *Barko Hydraulics* instructive on this matter. *See* 167 So. 3d at 310. In *Barko Hydraulics*, the manufacturer warranted its product, a knuckle boom loader used in logging, to be free from defects in "material or workmanship." *Id.* at 307, 310. The evidence showed that, "after four months of use, the 495ML loader began to overheat and to use excessive fuel and hydraulic fluid." *Id.* at 310. And "after the 495ML loader was serviced repeatedly, the hydraulic pumps stopped working." *Id.* The consumer sued for breach of express warranty, among other claims, and a jury returned a favorable verdict.

In upholding the jury verdict, the Alabama Supreme Court rejected the manufacturer's arguments that a "plaintiff asserting a breach-of-warranty claim must establish the presence of a specific defect," and that the plaintiff "failed to prove that there was any defect in the 495 ML loader." *Id.* at 309. The court concluded that, in contrast to a tort action for products liability, "the identification of an existing defect is not essential to recovery upon an express warranty." *Id.* at 310. Rather, "[i]t is sufficient if . . . the evidence

shows, either directly or by permissible inference, that the [product] was defective in its performance or function or that it otherwise failed to conform to the warranty." *Id.* And the court found that the evidence, as described above, was sufficient for a jury to reach that conclusion. *Id.*

Notably, one justice filed a dissent from that holding. *See Barko Hydraulics*, 167 So. 3d at 314 (Stuart, J., concurring in part and dissenting in part). The dissent reasoned that the breach-of-warranty claim failed because the plaintiff had not identified "any evidence or testimony in the record indicating that the 495ML loader suffered from 'defects in material and workmanship.' Rather, he essentially argues that the mere fact that the hydraulic pumps on the 495ML loader failed is itself sufficient evidence that the 495ML loader was defective." *Id.* Thus, in the dissent's view, any finding of a manufacturing defect by the jury was "based on nothing more than mere speculation that there might have been such a defect." *Id.* at 318. The dissent claimed that the majority opinion disregarded the specific terms of the express warranty at issue, which applied to only defective materials and workmanship, and instead adopted an "all embracing rule" that identification of an existing defect is not essential to recovery upon an express warranty. *See id.* at 316–17.

Here, the district court erred in dismissing Harman's breach-of-warranty claim based on a manufacturing defect. Like the plaintiff in *Barko Hydraulics*, Harman sued for breach of an express materials-and-workmanship warranty. *See id.* at 307. She also

plausibly alleged that the Taurus PT 738 was, in the words of *Barko Hydraulics*, "defective in its performance or function." *Id.* Indeed, according to the allegations, a critical firearm component broke in half during normal use, causing severe injury. Although the allegations of a manufacturing defect were conclusory, "the identification of an existing defect is not essential to recovery upon an express warranty." *Id.* So her failure to make that showing in the complaint does not preclude an inference that Taurus was liable for the misconduct alleged, and the case may move forward to discovery. *See Hunt*, 814 F.3d at 1221.

Taurus suggests that *Barko Hydraulics* did not mean what it says and that "[t]he breach of warranty at issue was the failure to repair as promised." True, the plaintiff in that case had repeatedly sought repairs, and there is no comparable allegation here. But *Barko Hydraulic*'s holding that the materials-and-workmanship warranty applied does not appear to have been based on the failure to repair.[5] Rather, the court concluded that there was sufficient evidence that "the 495ML loader was defective in its performance or

---

[5] Instead, the Alabama Supreme Court relied on the failure to repair in rejecting the defendant's argument "that the warranty period had already expired when the hydraulic pumps failed." *Barko Hydraulics*, 167 So. 3d at 311. The court reasoned that, "[g]iven the numerous attempts at repair over the extended period," the jury could have found that "the warranty had failed of its essential purpose." *Id.* Here, though, Taurus has not asserted an expiration of the warranty period, so we need not consider whether the warranty has failed of its essential purpose. *See., e.g.*, *Massey-Ferguson, Inc. v. Laird*, 432 So. 2d 1259, 1264 (Ala. 1983).

function or that it otherwise failed to conform to the warranty." *Id.* at 310.

Moreover, the dissenting opinion in *Barko* belies Taurus's claim that whether "the defect was a design defect or a manufacturing defect was not at issue." As we've noted, the dissent maintained that the manufacturer was entitled to judgment as a matter of law because the plaintiff had not identified "any evidence or testimony in the record indicating that the 495ML loader suffered from 'defects in material and workmanship.'" *Id.* at 315. Echoing the manufacturer's argument, the dissent said that "one asserting a breach-of-express-warranty claim based on a warranty warranting a product to be free from defects in material or workmanship must present evidence of a specific defect that constitutes a breach of the warranty." *Id.* at 315. The majority opinion did not suggest that the dissent's understanding of the issues was inaccurate. And it flatly rejected the view that "the plaintiff asserting a breach-of-warranty claim must establish the presence of a specific defect." *Id.* at 310. Thus, Taurus's attempt to evade *Barko Hydraulics* is unpersuasive.

For these reasons, we hold that Harman stated a plausible breach-of-express-warranty claim under Alabama law. We vacate the dismissal of this claim and remand for further proceedings.

## C.

Harman contends that the district court erred in dismissing her express-warranty claim based on Taurus's lifetime repair warranty. The court reasoned that no breach occurred because

Harman did not allege that she sought or was denied repairs under the warranty. The court did not err.

Under Alabama law, "claims that are based on the breach of a manufacturer's warranty to repair a good or to render certain services do not arise until the manufacturer actually fails or refuses to perform its obligation to repair the good or to render a service under the warranty." *Am. Suzuki Motor Corp. v. Burns*, 81 So. 3d 320, 325 (Ala. 2011). Thus, when there is an agreement to repair or replace, "no cause of action arises until the [manufacturer] has refused to repair or replace the goods." *Brown v. Gen. Motors Corp.*, 14 So. 3d 104, 112–13 (Ala. 2009).

In *Burns*, for example, the Supreme Court of Alabama held that the plaintiffs failed to state a claim for breach of a repair warranty when they had "neither sought nor been denied service for their vehicles under the warranties." 81 So. 3d at 325. Accordingly, the court found that dismissal was warranted at the motion-to-dismiss stage. *Id.*

The same is true here. The allegations in the operative complaint do not reflect that Harman either sought warranty service or was denied service for the gun under the lifetime repair warranty. Accordingly, it follows that Harman has not stated a viable claim for breach of that warranty under Alabama law.[6] *See Burns*, 81 So.

---

[6] Harman responds that *Burns* is distinguishable because the warranty in that case required the consumer to present the product for service, but the warranty here does not. Even assuming that's true, though, a promise to repair is distinct from a promise to issue a safety recall, which is effectively the

3d at 325; *Brown*, 14 So. 3d at 114.  And since Harman's ADTPA claim is based on the same warranty and the same arguments, it fails for the same reasons.

## IV.

That leaves Harman's FDUPTA claim, which the district court dismissed as barred by the statute of limitations.[7]  Harman maintains that the limitations period was tolled by Taurus's fraudulent concealment of the gun's defects.

FDUTPA claims are subject to a four-year statute of limitations under Fla. Stat. § 95.11(3)(e).  *Brown v. Nationscredit Fin. Servs. Corp.*, 32 So. 3d 661, 662 n.1 (Fla. Dist. Ct. App. 2010); *S. Motor Co. of Dade Cnty. v. Doktorcyk*, 957 So. 2d 1215, 1216–17 (Fla. Dist. Ct. App. 2007).  Harman does not dispute the court's finding that the limitations period began to run at the time of sale in 2011.  And the

---

interpretation Harman advances.  And we cannot square Harman's interpretation of the repair policy with Alabama law, as quoted above.  Harman relies on an unpublished district-court decision from California, but, in that case, the court concluded that presentment was not required for certain plaintiffs because other plaintiffs experiencing the same issue had presented their vehicles and received inadequate repairs.  *See Benkle v. Ford Motor Co.*, No. 16-cv-1569, 2017 WL 9486154, *11 (C.D. Cal. Dec. 22, 2017).  No comparable allegations are present in this case.  Despite allegations that the defect existed in all Taurus PT 738 firearms sold since 2009, the second amended complaint identifies only one prior instance of a broken slide.  And it provides no details about any repairs Taurus may or may not have provided in that instance.

[7] According to the second amended complaint, Taurus was a Florida corporation operating out of Florida at the time of the relevant events.

parties appear to agree that the statute of limitations may be tolled by fraudulent concealment by the defendant.[8]

Fraudulent concealment is a tolling doctrine that "requires the defendants to engage in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 (11th Cir. 2003) (citing *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809 (Fla. Dist. Ct. App. 1995)). Generally, "the fraud must be of such a nature as to constitute active concealment to prevent inquiry or elude investigation or to mislead a person who could claim a cause of action." *Nardone v. Reynolds*, 333 So. 2d 25, 39 (Fla. 1976).

The Florida Supreme Court has defined "concealment" in part as "the act of refraining from disclosure," which "implies knowledge." *Nehme v. Smithkline Beecham Clinical Labs., Inc.*, 863 So. 2d 201, 204–05 (Fla. 2003) (addressing Fla. Stat. § 95.11(4)(b), which extends the statute of repose in a medical malpractice action for "fraud, concealment, or intentional misrepresentation of fact"). Concealment therefore requires "intentional acts [that] prevent discovery." *Id.* at 205. Negligent conduct is not enough. *Id.* ("A negligent diagnosis, without more, does not constitute concealment.").

---

[8] *But see Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, No. 2:97-cv-416, 2000 WL 33992234, *8 (M.D. Fla. Mar. 31, 2000) (concluding that "the doctrine of fraudulent concealment is unavailable under Florida law").

As to "fraudulent means," Florida law "recognizes that fraud can occur by omission." *ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. Dist. Ct. App. 2003). In particular, "[a] defendant's knowing concealment or nondisclosure of a material fact may . . . support an action for fraud where there is a duty to disclose." *Gutter v. Wunker*, 631 So. 2d 1117, 1118–19 (Fla. Dist. Ct. App. 1994); *see Nardone*, 333 So. 2d at 39. But absent a duty to disclose, "mere nondisclosure of all material facts in an arm's length transaction is ordinarily not actionable . . . unless some artifice or trick has been employed to prevent the representee from making further independent inquiry." *Ramel v. Chasebrook Constr. Co.*, 135 So. 2d 876, 882 (Fla. Dist. Ct. App. 1961).

Here, Harman's allegations, accepted as true and drawing all reasonable inferences in her favor, reflect that Taurus intentionally concealed a known defect in Taurus PT 738 pistols. She alleged that Taurus, with knowledge of the PT 738's defective slide through internal testing and a similar broken slide incident in 2014, "actively instructed" its employees to hide details about and avoid mentioning the defect. These allegations are sufficient to establish "willful concealment" at the pleading stage. *See Raie*, 336 F.3d at 1282. So the question is whether Taurus "us[ed] fraudulent means to achieve that concealment." *Id.*

The district court concluded that Harman's allegations were insufficient because they amounted to only "mere nondisclosure." *See, e.g.*, *Fisher v. Harley-Davidson Motor Grp., LLC*, 2019 WL 8014364, *2 (S.D. Fla. Oct. 18, 2019) ("Courts applying Florida law

have held that the 'fraudulent means' alleged must go beyond mere nondisclosure, and must constitute active and willful concealment.") (quotation marks omitted); *Licul v. Volkswagen Grp. Of Am.*, No. 13-cv-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) (same). Our review of Florida case law, however, indicates that nondisclosure may constitute concealment by fraudulent means when there is a "duty to disclose." *See Nardone*, 333 So. 2d at 39; *Gutter*, 631 So. 2d at 1118–19; *Ramel*, 135 So. 2d at 882.

The district court did not address whether a duty to disclose existed in this case. And as Harman points out, the court's decision in Chris's related personal-injury case seemingly found a plausible duty to disclose based on substantially similar allegations, albeit under Alabama law rather than Florida law. *See Harman v. Taurus Int'l Mfg., Inc.*, No. 3:21-cv-98, 2023 WL 2534622, *5 (M.D. Ala. Mar. 15, 2023). If there was a duty to disclose, Taurus's knowing concealment or nondisclosure of a material fact—the alleged defect in the PT 738 pistol—plausibly establishes the use of "fraudulent means." *See Brooks*, 847 So. 2d at 551; *Gutter*, 631 So.2d at 1118–19.

But if no duty to disclose existed, we agree with the district court that Harman's allegations do not reflect the type of fraudulent means that would warrant tolling of the limitations period. "Active" nondisclosure is still nondisclosure. And even assuming denial of a defect would ordinarily be enough, Harman fails to allege that any such denials were made to or known by her, so there is no basis to conclude that any such denials misled her or concealed her cause of action. *See Fisher*, 2019 WL 8014364, *3

("Plaintiff cannot rely on statements that may or may not have been made to unnamed nonparties to toll his own statute of limitations.").

Because the district court did not address whether there was a duty to disclose, we are unable to review the court's dismissal of the FDUTPA claim at this time. So we vacate and remand for the court to reassess the issue of fraudulent concealment consistent with this opinion.

## V.

In sum, we affirm the dismissal of Harman's claims for breach of the repair warranty and for violation of the ADTPA. We vacate the dismissal of her claim for breach of the materials-and-workmanship warranty and her FDUTPA claim, and we remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART and VACATED AND REMANDED IN PART.**